## H. A. NORTHROP *et al* v. WILLIAM ANDREWS.

1. TITLE, *Action to Quiet, When Not Maintained.* A person in the possession of real estate cannot maintain an action to quiet his title thereto as against another person who holds the legal title thereto, and a claim for a portion of the purchase-money therefor.

2. ———— *Defense; No Estoppel.* Under the facts of this case, *held*, that no such estoppel exists as against the person holding the legal title to the property as will bar him from setting up his interest therein.

*Error from Saline District Court.*

ACTION to quiet title. Judgment for plaintiff Andrews at the December term, 1886. The defendants, *Northrop* and another, bring the case here. The opinion states the facts.

*Lovitt & Sturman*, for plaintiffs in error.

*Garver & Bond*, for defendant in error.

The opinion of the court was delivered by

VALENTINE, J. : This was an action brought in the district court of Saline county, by William Andrews against H. A. Northrop, to quiet the plaintiff's title to a certain forty-acre tract of land situated in said county. The defendant answered, and the plaintiff replied. Afterward, W. J. Bartholf became a party defendant, and filed an answer alleging that he had purchased the property from Northrop, and that he was the owner thereof. The case was tried before the court without a jury, and the court found generally in favor of the plaintiff and against the defendants, and rendered judgment accordingly ; and the defendants, Northrop and Bartholf, as plaintiffs in error, bring the case to this court for review.

It appears that on August 3, 1878, John J. Banks owned the property in controversy, and all the parties now claim under him. Banks in fact owned a tract of land containing 200 acres, which tract included the land now in controversy, and upon this tract was a mortgage executed by Banks to David Irish, to secure the sum of $1,600 and interest. Banks was also at the same time indebted to Northrop in the sum of $135. On the date aforesaid, Banks executed a warranty deed to Northrop for the land in controversy — the consideration therefor being the aforesaid indebtedness of $135, and some personal property worth about $215, the entire consideration being $350. The deed was recorded on the same day. Some time afterward Northrop discovered the existence of the aforesaid mortgage, and proposed to Banks "to give up the land" in controversy, and to receive back from Banks the price he paid for it, and Banks agreed thereto, and in pursuance thereof delivered to Northrop certain personal property worth about $150, leaving about $200 of the purchase-money still due and unpaid. Banks testified that he executed his promissory note to Northrop for that amount, but Northrop testified that no such note was ever executed. No further writing of any kind was at this time, or at any time afterward, executed between Banks and Northrop ; but the entire agreement between them,

except the possible promissory note aforesaid, was in parol. On March 25, 1879, Banks sold and conveyed by warranty deed the entire two-hundred-acre tract of land to Irish, the consideration therefor being $4,000. And on February 16, 1884, Irish sold and conveyed the land by warranty deed to Andrews, the consideration therefor being $3,000. These deeds were recorded on the days on which they were respectively executed. On May 26, 1886, Northrop sold and conveyed the land in controversy by a quitclaim deed to Bartholf, the consideration being $400. This deed was recorded on the same day. From the time when Irish purchased the aforesaid two-hundred-acre tract of land from Banks up to the commencement of this action, Irish and Andrews had the possession thereof, paid the taxes thereon, and made valuable improvements thereon, but none of the improvements were made upon the forty-acre tract of land now in controversy.

The plaintiffs in error, who were defendants below, claim that the court below committed the following errors: First, in admitting evidence, over the objections of the defendants, to prove the aforesaid parol agreement between Banks and Northrop with reference to Northrop's "giving up" the land in controversy; second, in permitting evidence to be introduced in relation to other land than the land in controversy, for instance, in admitting evidence as to the price paid for such *other* land, the taking of the possession thereof, the making of improvements thereon, and the paying of the taxes thereon; third, in admitting secondary and hearsay evidence with respect to the payment of taxes; fourth, in overruling the defendants' demurrer to the plaintiff's evidence.

With reference to some of these matters we think the court below did commit material and substantial error. Land cannot be conveyed by parol, nor can any person divest himself of any title thereto or interest therein by the mere use of oral declarations. (Statute of Frauds and Perjuries, §§ 5 and 6.) And generally, even the payment of the purchase-money for the land will not take a case out of the statute of frauds where the case would otherwise be within such statute. (2 Reed, St. Frauds, § 592, and cases there cited.) But there was really

no agreement of any kind in this case for Northrop to trans-
fer his title, or to divest himself of his title.  All that was
intended by the parol agreement was to let the land go if it
had to go, in payment of the mortgage.  Northrop simply
agreed "to give up the land."   He still continued, however,
to hold the legal title thereto.  It was some security for the
$200 which Banks still owed to him.  This amount has never
been paid, and of course Northrop, or his grantee, Bartholf,
should not be divested of Northrop's title to the land until
this amount is paid.  There has nothing been done to take the
aforesaid parol contract out of the statute of frauds.  The
plaintiff below, however, relies principally upon a supposed
estoppel to establish his title to the land, and this estoppel he
supposes arises from the above-stated facts, and from the fact
that Northrop abandoned the land or the possession thereof
from the time of the parol agreement, which was sometime in
the year 1879, up to the commencement of this action, which
was May 21, 1886.  Northrop never, however, abandoned
his title nor the debt of $200 due from Banks on account of
2. Defense, no    the purchase-money.  We think there is no room
   estoppel.       for the interposition of an estoppel in the present
case.  Neither Irish nor Andrews was a party to the parol
agreement between Northrop and Banks.  Neither was pres-
ent when it was made, nor did either have any interest therein.
The agreement was wholly, entirely and exclusively between
Northrop and Banks.  Nor was the agreement made with any
intention of defrauding either Irish or Andrews, or of influ-
encing either, and when Irish and Andrews purchased the
land, Northrop's deed was on record and they were bound to
take notice that Northrop held the legal title to the land, and
if they had inquired of Northrop he would have told them,
as he did tell Andrews upon inquiry, that he intended to
make the land pay the $200 debt which Banks still owed to
                 him.  Of course Andrews cannot maintain this
1. Action to
   quiet title, not action;  for this is an action to quiet title, and
   maintained.
                 Northrop has some interest in the land.  Probably
the real equities between the parties are as follows: The land
should be held liable for the payment of the following claims, in

the following order, to wit: first, all the taxes and interest paid by Irish and Andrews; second, the amount of the mortgage formerly held by Irish with interest; third, the two hundred dollars debt due from Banks to Northrop with interest; fourth, any remainder over should go to Andrews. However, these matters cannot be settled in this present case. The present case is prosecuted by Andrews upon the theory that he holds the entire, absolute and unqualified title to the land as against the defendants, which he does not, and therefore he cannot recover. Bartholf holds the legal title to the land, and while he may hold it in trust for the satisfaction of the aforesaid claims, in the order above mentioned, yet the question as to whether he so holds it or not, and the questions with reference to the amounts and the priorities of such claims, cannot be settled in this case. We think it is unnecessary to further comment upon the errors complained of in this case.

The judgment of the court below will be reversed, and the cause remanded for further proceedings.

All the Justices concurring.