J. N. ROGERS, *Appellee*, V. F. L. DOCKSTADER et al.;
*Appellants*.

No. 18,107.

SYLLABUS BY THE COURT.

WRITTEN LEASE—*Surrendered by Oral Agreement*. A written
lease for a term of years may be surrendered by agreement
of the parties thereto, without the execution and acceptance
of a release in writing. If the facts and circumstances show
a mutual understanding and agreement to terminate the rela-
tion of landlord and tenant, a surrender of possession by the
latter and the recognition of another tenant by the former,
such lease will be deemed to have been surrendered.

Appeal from Marion district court.  Opinion filed
July 5, 1913.  Reversed.

*E. R. Dean*, and *Richard Williams*, both of Marion,
for the appellants.

*H. S. Martin*, of Marion, for the appellee.

The opinion of the court was delivered by

WEST, J.: This was an action to recover rent claimed
to be due by the terms of a written lease. Neither the
abstract nor the transcript for which we sent sets
out the lease, but it is stated in the brief of the appellee
that it was a long time written lease containing an
agreement to pay $50 a year and all taxes and assess-
ments of whatsoever kind or nature, whether general
or special, which might be levied against the real estate.
It appears that the lease was made to defendant Goff,
who, after occupying the land about two months,
sold the livery barn upon the property to defendant
Dockstader. Goff testified that after he sold to Dock-
stader he saw the plaintiff and asked him if it would be
all right to sell and was told that it would; that he then
settled for the rent up to the first of July and told the
plaintiff he would have to look to Dockstader for the

rent, to which the plaintiff replied "All right." Dockstader testified that when he was buying the livery barn he asked Goff what kind of a lease he had on Doctor Roger's lots and was told that he had none; that after he bought he saw the plaintiff and said, "What about this lot, what are you going to charge me for it?" and that the plaintiff replied, "$50 a year and taxes"; that he paid the taxes in 1909 and boarded the plaintiff's horse, and when he went to pay the taxes for 1910 he found the tax was $246 and some cents, of which it appears that $238.97 was sidewalk tax and $7.72 sewer tax. From the transcript we learn that plaintiff testified as follows:

"Q. It was at that time, was it, Doctor, that Mr. Goff came to you and told you he had sold the barn to Dockstader, and he figured up with you the amount that was between you, and you paid him some money? A. I think so."

On cross-examination Goff testified:

"In regard to that lease I says, 'Now I have settled up with you until the first day of July; you are to look to Mr. Dockstader for your rent.' He said he would.
"Q. That was all he said, was it? A. Yes, sir, that was about all he said, that I remember of.
"Q. You are sure that is all he said? A. Yes, sir."

He further testified that since that time the plaintiff had never said anything to him in regard to the rent or made any demand upon him. Dockstader testified that the board bill for the plaintiff's horse amounted to about $151; that he also paid the taxes for 1909 and offered to pay the taxes for 1910 except the special assessments. Plaintiff denied that he had any agreement whatever with Goff to release him from his written lease and denied the recollection of any talk with Dockstader except that the latter at one time asked him something about the lease. By consulting the defendants' brief we learn that the court instructed the jury that as to defendant Goff there was no evidence

offered that would relieve him from liability for whatever rent was due and unpaid upon the lease in question; that his testimony to the effect that he made an oral or verbal agreement with the plaintiff from which he was to be released was not binding in law, and even if such oral release was attempted to be made Goff would still be liable for any rent which was still due and not paid upon the lease; that to be relieved by the lessee the release must be in writing and the verdict should be for the plaintiff against Goff for the amount of rent, including the taxes assessed and levied against the property. It also appears from the same document that the court refused an instruction to the effect that if Dockstader was in possession under a verbal agreement to pay a stated sum and the tax as annual rent, special assessments for improvements upon the premises are not taxes. It is also stated that the jury returned a verdict for the plaintiff, but for what sum and against whom we are not advised.

As nearly as we can ascertain from these various sources, it would seem that the question presented is whether or not a lease for a term of years can be surrendered otherwise than by a release in writing. In *Weiner v. Baldwin,* 9 Kan. App. 772, 59 Pac. 40, an. instruction that the agreement to surrender a lease need not be in writing was approved.

"A surrender, as the term is used in the law of landlord and tenant, is the yielding up of the estate to the landlord, so that the leasehold interest becomes extinct by mutual agreement between the parties. The rescission of a lease, when by express words, is called an express surrender or a surrender in fact; and when by acts so irreconcilable to a continuance of the tenure as to imply the same thing it is called a surrender by operation of law. . . . While the definitions of what constitutes a surrender by operation of law differ somewhat in the language used, the rule may safely be said to be that a surrender is created by operation of law when the parties to a lease do some act so inconsistent with the subsisting relation of landlord and

tenant as to imply that they have both agreed to consider the surrender as made. . . . Where a landlord grants a new lease to a stranger with the assent of the tenant during the existence of an outstanding lease, and the tenant gives up his own possession to the stranger, who thereafter pays rent, or where in any other way a new tenant is by agreement of the tenant and the landlord substituted and accepted in place of the old, there is a surrender by operation of law. It is immaterial that the old lease is not canceled, or that the original lessee signs the new lease as surety. . . . An express agreement to accept the premises need not be shown, but the landlord's consent may be implied from circumstances and from the act of the parties. There must, however, be some unequivocal act on the part of the landlord which unmistakably evinces an intention on his part to terminate the lease and the relationship of landlord and tenant." (24 Cyc. 1366, 1367, 1370, 1373.)

(See, also, Taylor's Landlord and Tenant, 9th ed., §§ 509, 514, 515.)

It must be true upon principle that when, prior to the expiration of a written lease, the landlord and tenant agree to terminate the relation, and possession of the premises is surrendered up by the tenant to the landlord, who lets to another and agrees to and does look to such other for the rent, the same result is effected as by a written release and acceptance. Section 5 of the frauds and perjury act (Gen. Stat. 1909, § 3837) is referred to. This provides that no lease, estates or interests of, in or out of lands exceeding one year in duration shall be assigned or granted unless by deed or note in writing, etc. The succeeding section (§ 3838), prescribing that any contract for the sale of lands or any interest in or concerning them must be in writing, is also referred to, but the manifest application of these sections is to grants of interest rather than to a surrender of an interest already granted. But even if directly applicable, still the law would not permit the landlord, after having settled in full and accepted a surrender of the possession of the premises,

Rogers v. Dockstader.

and assumed full dominion and control by reletting to another, to claim the aid of a court to disregard such acceptance and recognition on his part and still hold the lessee for rent for which the landlord had agreed to look to another. In *Northrop v. Andrews,* 39 Kan. 567, 18 Pac. 510, cited by the plaintiff, it was said in the opinion (p. 569) that land can not be conveyed by parol and that a person can not divest himself of any interest therein by the mere use of oral declarations, which, of course, is a correct statement of the law. The language quoted in *Durham v. Hadley,* 47 Kan. 73, 80, 27 Pac. 105, from the decision in *O'Neill v. Douthitt,* 40 Kan. 689, 20 Pac. 493, to the effect that everything affecting real estate must be in writing, was used with reference to an attempted release of a mortgage by one not shown to have authority to release it. In *Engstrom v. Tyler,* 46 Kan. 317, 26 Pac. 735, it was held to be a good defense to an action for rent that during the term of the lease the landlord entered and took possession and leased to various parties and collected and retained the rent. It is true that if the plaintiff merely acquiesced in a change of tenant without an agreement to accept him in lieu of the lessee, and without any agreement or understanding to terminate the latter's tenancy, he would be entitled to recover upon his lease. (*Bonetti v. Treat,* 91 Cal. 223, 27 Pac. 612, 14 L. R. A. 151.)

As we are not advised whether or not the jury included the special assessments in the amounts of their verdict we are unable to say that the refusal of the requested instruction touching the definition of the word taxes was prejudicial. While as ordinarily used in the statutes taxes are not special assessments, or vice versa, still the use of the word taxes in a contract may call for a meaning to be determined by the terms of the instrument and by the circumstances surrounding the transaction. (*Railway Co. v. Railroad Co.,* 75 Kan. 167, 88 Pac. 1085.)

12—90 Kan.

The instruction that there was no evidence offered that would relieve Goff from liability and that the verbal agreement testified to by him would not be binding in law, and that a release could only be had by a written instrument, was incorrect, and testimony touching the transaction between the parties should all have been considered for the purpose of ascertaining whether or not the relationship of landlord and tenant was by mutual agreement terminated.

We have been embarrassed by the lack of information as to what was really done in the court below, but from such means as we have been able to obtain we reach the conclusion that the instruction referred to was erroneous.

The judgment is therefore reversed and the cause remanded for further proceedings in accordance herewith.