No. 58,394

BECKY DAVIS a/k/a REBECCA DAVIS and RONNIE DAVIS, *Appellants/Cross-Appellees,* v. MELVIN ODELL, GLORIA ODELL, and MADALEIN ODELL, *Appellees/Cross-Appellants.*

(729 P.2d 1117)

Opinion filed December 5, 1986.

*Paul M. Dent,* of Kansas City, and *Richard Scaletty,* of Independence, Missouri, argued the cause and were on the brief for the appellants/cross-appellees.

*Scott I. Asner,* of Kansas City, argued the cause, and *Edward H. Powers, Jr.,* of Oskaloosa, was on the brief for the appellees/cross-appellants.

The opinion of the court was delivered by

PRAGER, J.: This is an action brought by former tenants of an apartment to recover from their former landlords compensatory damages for conversion of the plaintiffs' household goods and punitive damages. The case was tried to a jury which answered certain special questions in favor of the plaintiffs. Both sides have appealed.

Although there were some minor factual conflicts in certain areas, the essential facts in the case were not in dispute and are

as follows: In March of 1982, the plaintiffs, Becky Davis and Ronnie Davis, rented an apartment from the defendants, Melvin, Gloria, and Madalein Odell, in a building complex known as the Suntree Plaza Apartments in Kansas City, Kansas. The plaintiffs failed to pay their rent which was due and owing on August 13, 1983. The defendants served the three-day statutory notice on the plaintiffs to either pay the rent or an action would be brought to evict the tenants. Plaintiffs did not pay the rent. The Odells then brought an action to recover possession of the apartment and for judgment for unpaid rent in the sum of $652.50 in the district court of Wyandotte County.

On September 7, 1983, a default judgment was rendered in favor of the Odells for possession of the apartment, for court costs, and for unpaid rent in the sum of $652.50. This judgment is conceded to be a valid judgment. On September 8, 1983, the clerk of the district court issued a writ of restitution and execution to the sheriff of Wyandotte County directing the sheriff to cause Mr. and Mrs. Davis, as tenants, to be removed from the premises and the landlords to be restored to the possession of the apartment, and that the nonexempt personal property of the defendants, Ronnie and Becky Davis, be executed upon to satisfy the judgment and costs, together with fees for execution of the writ, as provided by law.

On September 13, 1983, pursuant to the writ of execution, the Odells, under the supervision of a Wyandotte County Deputy Sheriff, took possession of the apartment and removed therefrom the personal property of Mr. and Mrs. Davis. The Odells took charge of the property and stored it inside a building, although there was some dispute in that regard. The plaintiffs testified that the property was stored in an open field behind a fence where it was rained on.

On the day the Davises were evicted, they had left the apartment that morning to go to work. Upon their return in the afternoon, they discovered that all of their personal property had been removed and was in the possession of the Odells. Plaintiff, Becky Davis, demanded the return of their property but the defendants refused to release the property unless the plaintiffs paid the sum of $1,737.50, that amount being for back rent, court costs, and removal expenses, plus claimed damages resulting from the abuse of the property by the plaintiffs. The plaintiffs did

not pay that amount or tender any money to obtain the return of their personal belongings.

The defendants sent to the Davises a letter advising them that defendants intended to sell the personal property. On November 2, 1983, the defendants published a notice in the Wyandotte Echo advising the Davises that on or about November 7, 1983, their "furniture, household goods and miscellaneous personal items" would be offered for sale. The defendants heard nothing from the plaintiffs. No further demand was made by the Davises for the personal property. Thereafter, the defendants disposed of plaintiffs' property either by sale or other disposition. The record does not show exactly what the defendants did with the plaintiffs' property.

In the petition filed in this case on August 27, ·1984, the plaintiffs, as former tenants, claimed that they were entitled to recover from the defendants the value of their personal property on the theory of conversion and also because of violations of the Kansas Residential Landlord and Tenant Act (K.S.A. 58-2540 *et seq.*). Stated simply, it was the position of the plaintiffs that the defendants, their landlords, unlawfully took possession of and confiscated their personal property without legal justification or excuse in violation of K.S.A. 58-2567. In their answer, the defendants took the position that the tenants had abandoned the dwelling unit and the personal property and, under K.S.A. 58-2565(d), they had a right to take possession of the personal property, store it at the tenants' expense, and sell or otherwise dispose of the same by giving 15 days' notice prior to the sale and by mailing a copy of the publication notice to the tenants at the tenants' last known address. Defendants contended that because the tenants failed to respond or make any claim to the property, defendants had a right to assume it was abandoned and dispose of it without liability to the tenants. The defendants counterclaimed seeking to recover damages from the plaintiffs to pay the judgment for unpaid rent and costs in the forcible detainer action, for the expense of removing the tenants' belongings from the apartment, for the cost of painting and cleaning the premises, and for replacing certain damaged carpet. The defendants claimed that the total damages due from the plaintiffs were $1,737.50. The plaintiffs denied that they had left the apartment in disrepair.

The case was tried to a jury on April 22-24, 1985. The jury's verdict consisted of answers to special questions. Although the plaintiffs had testified that the value of their personal belongings amounted to $12,385, the jury found the fair and reasonable market value of plaintiffs' possessions taken by defendants to be $2,000 and that the reasonable cost of removing the property was $90, thus entitling the plaintiffs to a net recovery of $1,910. The trial court, on grounds of equity, reduced the judgment another $500 to $1,410. The court then allowed the defendants to set off their forcible detainer judgment and court costs, but also permitted the plaintiffs to recover their $200 security deposit. The plaintiffs were also awarded their filing fees in the case.

On the appeal, the plaintiffs raise five issues in their brief. The first two issues involve the trial court's failure to sustain plaintiffs' motion for default judgment because of defendants' failure to file an answer to the plaintiffs' amended petition. Plaintiffs also claim that the trial court erred in denying plaintiffs' motion for summary judgment on the plaintiffs' first amended petition. As noted heretofore, the plaintiffs were awarded a verdict by the jury which would render these issues moot. However, the trial court properly concluded that there were genuine issues of fact involved in this case and denied summary judgment in favor of the plaintiffs.

The next point raised by the plaintiffs on the appeal is that the trial court erred in failing to instruct the jury that a landlord's taking of possession of a tenant's personal property upon his eviction as security for unpaid rent is a violation of K.S.A. 58-2567. In opposition to that position, the defendants contend that K.S.A. 58-2565 is the controlling statute and that K.S.A. 58-2567 is not applicable.

The issues raised require us to analyze certain provisions of the Kansas Residential Landlord and Tenant Act (K.S.A. 58-2540 *et seq.*) which was adopted by the Kansas Legislature in 1975. The basic provisions and the purpose of the Kansas Residential Landlord and Tenant Act are discussed in some depth in *Clark v. Walker*, 225 Kan. 359, 590 P.2d 1043 (1979). In *Clark*, it is pointed out that prior to the enactment of the residential landlord and tenant act there was little or no statutory law in Kansas governing landlord-tenant relations. It was apparent to the legislature that the antiquated common-law concepts and the ab-

sence of statutory law created problems and worked to the detriment of both landlords and tenants who were operating on different legal premises. A special committee of the legislature was appointed to study the problem area, and, as a result, the 1975 legislature enacted a comprehensive landlord-tenant code to establish a single standard of reference for both landlords and tenants.

The Kansas act was based in part on the Uniform Residential Landlord-Tenant Act with certain modifications. Various provisions of the act are summarized in *Clark v. Walker*, 225 Kan. at 364. It is clear that, under the act, both landlords and tenants gained certain advantages and suffered certain disadvantages in order to strike a reasonable balance between the interest of both landlords and tenants. One of the most significant provisions was K.S.A. 58-2567 which provides as follows:

"58-2567 **Lien or security interest in tenant's personal property unenforceable; distraint abolished, exception.** (a) Except as otherwise provided in this act, a lien or security interest on behalf of the landlord in the tenant's household goods, furnishings, fixtures or other personal property is not enforceable unless perfected prior to the effective date of this act.

"(b) Except as otherwise provided in K.S.A. 58-2565, distraint for rent is abolished."

This section eliminated any lien or security interest on behalf of the landlord in the tenant's household goods, furnishings, fixtures, or other personal property after the effective date of July 1, 1975. Subsection (b) abolished distraint for rent except as otherwise provided in K.S.A. 58-2565. The term "distraint" is not defined in the statutes. "Distraint" has been defined as a summary extrajudicial remedy having its origin in the common law under which it consisted of seizure and holding of personal property by individual action without intervention of legal process for the purpose of compelling the payment of a debt. *Raffaele v. Granger*, 196 F.2d 620 (3rd Cir. 1952). It has been said that the word "distraint" comprehends any seizure of personalty to enforce a common-law or statutory right or lien. *In re Timberline Lodge*, 139 F. Supp. 13, 16 (D. Or. 1955).

In the law of landlord and tenant, rather than the word "distraint," the term "distress" has been used where there was a taking of the tenant's personal property by a landlord in order to obtain satisfaction for past due rent. All goods of the tenant on leased premises were considered to be subject to a privilege of

the landlord to seize the personal property and hold it as security for the payment of rent. The concept of "distress" is discussed in 49 Am. Jur. 2d, Landlord and Tenant § 726 as follows:

"Distress for rent in arrears, whereby the landlord may seize personal property on the demised premises, is one of the oldest, as well as one of the most efficient, of the common-law remedies for the collection of rent. Broadly defined, common-law distress allows the landlord to go upon the demised premises and seize anything that he might there find, as security for rent in arrears, and hold it without sale until the rental is paid. The right to *distrain* arises from the moment the relation of landlord and tenant is established, and as administered at common law the remedy is enforceable against any removable personal property found upon the demised premises, whether belonging to the tenant or to a stranger." (Emphasis supplied.) p. 675.

The same section in 49 Am. Jur. 2d points out that in a number of jurisdictions in this country distress for rent either has been expressly abolished by statute or is deemed to be impliedly abolished by statutes relating to remedies for the recovery of rent.

The effect of K.S.A. 58-2567 was to abolish the common-law right of the landlord to distraint or distress for rent except as otherwise provided in K.S.A. 58-2565. K.S.A. 58-2565(d) and (e) were subsections not included in the uniform act and which were enacted in the Kansas act at the request of an organization representing the landlords. K.S.A. 58-2565 provides as follows:

"**58-2565. Extended absence of tenant; damages; entry by landlord; abandonment by tenant, when; reasonable effort to rent required; termination of rental agreement, when; personal property of tenant; disposition, procedure; proceeds; rights of person receiving property.** (a) If the rental agreement requires the tenant to give notice to the landlord of an anticipated extended absence in excess of seven days required in K.S.A. 58-2558, and the tenant willfully fails to do so, the landlord may recover actual damages from the tenant.

"(b) During any absence of the tenant in excess of thirty (30) days, the landlord may enter the dwelling unit at times reasonably necessary. If, after the tenant is ten (10) days in default for nonpayment of rent and *has removed a substantial portion of such tenant's belongings from the dwelling unit,* the landlord may assume that the tenant has abandoned the dwelling unit, unless the tenant has notified the landlord to the contrary.

"(c) If the tenant abandons the dwelling unit, the landlord shall make reasonable efforts to rent it at a fair rental. If the landlord rents the dwelling unit for a term beginning prior to the expiration of the rental agreement, it is deemed to be terminated as of the date the new tenancy begins. The rental agreement is deemed to be terminated by the landlord as of the date the landlord has notice of the abandonment, if the landlord fails to use reasonable efforts to rent the dwelling unit at a fair rental or if the landlord accepts the abandonment as a

surrender. If the tenancy is from month-to-month, or week-to-week, the term of the rental agreement for this purpose shall be deemed to be a month or a week, as the case may be.

"(d) If the tenant *abandons* or *surrenders* possession of the dwelling unit and leaves household goods, furnishings, fixtures or any other personal property in or at the dwelling unit, the landlord may take possession of the property, store it at tenant's expense and sell or otherwise dispose of the same upon the expiration of thirty (30) days after the landlord takes possession of the property, if at least fifteen (15) days prior to the sale or other disposition of such property the landlord shall publish once in a newspaper of general circulation in the county in which such dwelling unit is located a notice of the landlord's intention to sell or dispose of such property. Within seven (7) days after publication, a copy of the published notice shall be mailed by the landlord to the tenant at the tenant's last known address. Said notice shall state the name of the tenant, a brief description of the property and the approximate date on which the landlord intends to sell or otherwise dispose of such property. If the foregoing requirements are met, the landlord may sell or otherwise dispose of the property without liability to the tenant or to any other person who has or claims to have an interest in said property, except as to any secured creditor who gives notice of his or her interest in such property to the landlord prior to the sale or disposition thereof, if the landlord has no knowledge or notice that any person, other than the tenant, has or claims to have an interest in said property. During such thirty-day period after the landlord takes possession of the property, and at any time prior to sale or other disposition thereof, the tenant may redeem the property upon payment to the landlord of the reasonable expenses incurred by the landlord of taking, holding and preparing the property for sale and of any amount due from the tenant to the landlord for rent or otherwise.

"(e) Any proceeds from the sale or other disposition of the property as provided in subsection (d) shall be applied by the landlord in the following order:

"(1) To the reasonable expenses of taking, holding, preparing for sale or disposition, giving notice and selling or disposing thereof:

"(2) to the satisfaction of any amount due from the tenant to the landlord for rent or otherwise; and,

"(3) the balance, if any, may be retained by the landlord, without liability to the tenant or to any other person, other than a secured creditor who gave notice of his or her interest as provided in subsection (d), for any profit made as a result of a sale or other disposition of such property.

"(f) Any person who purchases or otherwise receives the property pursuant to a sale or other disposition of the property as provided under subsection (d) of this section, without knowledge that such sale or disposition is in violation of the ownership rights or security interest of a third party in the property, takes title to the property free and clear of any right, title, claim or interest of the tenant or such third party in the property." (Emphasis supplied.)

Subsection (d) authorizes the landlord to dispose of household goods, furnishings, and fixtures or any other personal property left on the leased premises in situations where the tenant has

abandoned or surrendered possession of the dwelling unit. This relieves the landlord of the burden of storing the property indefinitely until the tenant returns to get it. Simply stated, the landlord, after the expiration of 30 days after the landlord takes possession of the property, is authorized to sell or otherwise dispose of abandoned or surrendered personal property, provided the landlord publishes a 15-day notice prior to the sale or disposition in a newspaper of general circulation in the county in which the dwelling unit is located and gives notice by mail within seven days after publication to the tenant at his last known address. The notice shall contain a description of the property and the approximate date on which the landlord intends to sell or dispose of the property. If these requirements are satisfied, the landlord may sell or dispose of the property without liability to the tenant or to any other person who has or claims to have an interest in the property. There is a provision, however, for the protection of a secured creditor.

The primary issue presented in this case is whether the provisions of K.S.A. 58-2565(d) are applicable so as to afford the defendants, as landlords, the right to proceed thereunder and dispose of the tenant's personal property. The answer to that question, of necessity, depends upon whether the factual circumstances show that the tenants abandoned or surrendered possession of the dwelling unit and their personal property.

K.S.A. 58-2565(b) provides some insight as to what action of the tenant constitutes an abandonment. It states that, if the tenant is ten days in default for nonpayment of rent and has removed a substantial portion of the tenant's belongings from the dwelling unit, the landlord may assume that the tenant has abandoned the dwelling unit, *unless the tenant has notified the landlord to the contrary.* In the present case, the evidence was undisputed that the tenants were living in the apartment when they left for work in the morning and returned to find that all of their personal belongings had been removed from the apartment and were in the custody of the landlords. There was no evidence whatsoever to show that the tenants had removed a substantial portion of their belongings from the dwelling unit. Furthermore, the tenants immediately notified the landlords that they wanted their personal property back, which is contrary to any intention to abandon either the dwelling unit or the property.

The term "abandonment" and "surrender" have an established meaning in the law of landlord and tenant which logically should be applied in determining whether or not a tenant has abandoned or surrendered a dwelling unit and his or her personal property. In *Kimberlin v. Hicks,* 150 Kan. 449, 94 P.2d 335 (1939), the court cites 1 C.J.S., Abandonment, § 1 and defines "abandonment" as follows:

" ' "Abandonment" of property or a right is the voluntary relinquishment thereof by its owner or holder, with the intention of terminating his ownership, possession, and control, and without vesting ownership in any other person.' " 150 Kan. at 454.

In *Botkin v. Kickapoo, Inc.,* 211 Kan. 107, 505 P.2d 749 (1973), "abandonment" is discussed in some depth as follows:

"The law respecting abandonment as applied to property and property rights is well established. Generally, abandonment is the act of intentionally relinquishing a known right absolutely and without reference to any particular person or for any particular purpose. Abandoned property is that to which the owner has voluntarily relinquished all right, title, claim and possession, with the intention of terminating his ownership, but without vesting it in any other person and with the intention of not reclaiming future possession or resuming its ownership, possession or enjoyment. In order to establish an abandonment of property, actual relinquishment accompanied by intention to abandon must be shown. The primary elements are the intention to abandon and the external act by which that intention is carried into effect. Although an abandonment may arise from a single act or from a series of acts the intent to abandon and the act of abandonment must conjoin and operate together, or in the very nature of things there can be no abandonment. The intention to abandon is considered the first and paramount inquiry, and actual intent to abandon must be shown; it is not enough that the owner's acts give reasonable cause to others to believe that the property has been abandoned. Mere relinquishment of the possession of a thing is not an abandonment in a legal sense, for such an act is not wholly inconsistent with the idea of continuing ownership; the act of abandonment must be an overt act or some failure to act which carries the implication that the owner neither claims nor retains any interest in the subject matter of the abandonment. It is not necessary to prove intention to abandon by express declarations or by other direct evidence; intent to abandon property or rights in property is to be determined from all the surrounding facts and circumstances. It may be inferred from the acts and conduct of the owner and from the nature and situation of the property. Mere nonuse of property, lapse of time without claiming or using property, or the temporary absence of the owner, unaccompanied by any other evidence showing intention, generally are not enough to constitute an abandonment. However, such facts are competent evidence of an intent to abandon and as such are entitled to weight when considered with other circumstances (1 Am. Jur. 2d, Abandonment, Lost, Etc., Property, § 1, pp. 3-4, § 15, pp. 15-16, § 16, pp. 16-17, § 40, p. 32, § 41, pp. 33-34)." pp. 109-10.

The term "surrender" as used in the law of landlord and tenant is discussed in *Rogers v. Dockstader*, 90 Kan. 189, 191, 133 Pac. 717 (1913), which quoted *Weiner v. Baldwin*, 9 Kan. App. 772, 59 Pac. 40 (1899), as follows:

"In *Weiner v. Baldwin*, 9 Kan. App. 772, 59 Pac. 40, an instruction that the agreement to surrender a lease need not be in writing was approved.

" 'A surrender, as the term is used in the law of landlord and tenant, is the yielding up of the estate to the landlord, so that the leasehold interest becomes extinct *by mutual agreement* between the parties. The rescission of a lease, when by express words, is called an express surrender or a surrender in fact; and when by acts so irreconcilable to a continuance of the tenure as to imply the same thing it is called a surrender by operation of law. . . . While the definitions of what constitutes a surrender by operation of law differ somewhat in the language used, the rule may safely be said to be that a *surrender is created by operation of law when the parties to a lease do some act so inconsistent with the subsisting relation of landlord and tenant as to imply that they have both agreed to consider the surrender as made.' " (Emphasis supplied.)

These cases clearly hold that there cannot be a surrender of a leasehold by a tenant unless there is shown, either expressly or by implication, a mutual agreement between the landlord and tenant that the lease is terminated.

The undisputed evidence in the present case clearly established that the plaintiffs, as tenants, never intentionally abandoned the property nor did they surrender possession of the property. Possession of the property was obtained by the landlords through an action in forcible detainer filed in the district court of Wyandotte County. Thus, we have no hesitancy in holding that the provisions of K.S.A. 58-2565 are not applicable in this case and that the landlords had no legal right to dispose of the plaintiffs' personal property in accordance with the procedure set forth in subsection (d) of K.S.A. 58-2565. The landlords obtained possession of the dwelling unit and also of the personal belongings of the tenants as the result of an execution on the landlords' judgment for restitution of the premises and for recovery of rent in the sum of $652.50. The sheriff was directed to cause the tenants' belongings to be removed from the premises and the landlords restored to possession of the apartment together with an execution on the nonexempt personal property of the judgment debtors, Ronnie and Becky Davis. The deputy sheriff did not carry out the execution required by the writ issued by the clerk of the court. The sheriff turned the property over to the defendants, as landlords, who had no right to either sell or

dispose of the property other than by execution as provided by statute. Because of the fact that the defendants in this case, as landlords in possession of the tenants' property, had no right to sell the property or dispose of it except as provided by law, their act of selling or disposing of the property constituted a conversion as a matter of law. The measure of damages for conversion of personal property is the value of the property at the time and place of the conversion.

Although the jury was improperly instructed in this case as to the right of a landlord to sell or dispose of a tenant's property where the property has been abandoned or surrendered by the tenant, the jury obviously found that there had been no abandonment or surrender. The jury specifically found, in its answers to the special questions, that the plaintiffs made demand on the defendants or their employees for the return of their personal possessions and belongings. The jury found that the fair and reasonable market value of the plaintiffs' possessions and belongings taken on September 13, 1983, was $2,000, and that the cost of removing the personal property from the apartment was $90. The court, on its own motion "on grounds of equity," subtracted $500 and reduced the award to $1,410. The plaintiffs maintain that the court had no right to reduce the award of the jury in that amount and we agree. There was substantial competent evidence to support the verdict of the jury that the value of the plaintiffs' belongings was $2,000. The court did not grant a remittitur. It simply reduced by $500 the value of the personal property as found by the jury. We hold that the trial court erred in that regard. The plaintiffs' jury award should be restored to the amount of $1,910.

Another point raised by the plaintiffs on the appeal is that the trial court erred in refusing to allow the jury to consider an award of punitive damages. In *Geiger v. Wallace*, 233 Kan. 656, 661-62, 664 P.2d 846 (1983), it was held that, in a proper case, a tenant may recover punitive damages from a landlord where there has been a violation of the Kansas Residential Landlord and Tenant Act. In order to recover punitive damages, the plaintiffs were required to show that the defendants maliciously, willfully, or wantonly violated plaintiffs' rights. We agree with the trial court that punitive damages were not justified by the evidence in this case. The record is clear that the defendants acted on advice of

counsel and with the misunderstanding that K.S.A. 58-2565 was applicable. The defendants, as landlords, went to court and obtained a judgment for forcible detainer and for unpaid rent. They obtained an execution on their judgment. They attempted to follow the procedure set forth in K.S.A. 58-2565(d) in disposing of the tenants' property. We think it also significant in this case that the plaintiffs, as tenants, made no attempt to contact the defendants after September 13, 1983, until they filed their action on August 27, 1984. If they had obtained a lawyer, the plaintiffs could have claimed the right to possession of their property and the matter possibly could have been adjusted to the satisfaction of all parties. We have concluded from the record that, although the defendants' acts of withholding and disposing of the plaintiffs' personal belongings were tortious and not authorized by law, they acted in good faith in a way they thought was legally appropriate. Under the circumstances, we hold that the trial court did not err in failing to submit the issue of punitive damages to the jury.

In view of our disposition of this case on the appeal, we do not deem it necessary to consider the issue raised by the defendants on their cross-appeal. K.S.A. 58-2565 is not applicable under the factual circumstances in this case. Hence, the issue of its constitutionality is not properly before us.

The judgment of the district court is affirmed in part and reversed in part. The case is remanded to the district court with directions to restore the sum of $500 deleted from the verdict of the jury and to render judgment in favor of the plaintiffs as so modified.