(62 P.3d 1105)

No. 87,987

STATEWIDE AGENCIES, INC., *Appellant*, v.
DEBRA DIGGS, *Appellee*.

Opinion filed
February 7, 2003.

*Thomas D. Arnhold*, of Thomas D. Arnhold, P.A., of Hutchinson, for appellant.

*Kerry J. Granger*, of Hutchinson, for appellee.

Before GERNON, P.J., KNUDSON, J., and LARSON, S.J.

LARSON, S.J.: This landlord/tenant appeal raises the question of whether a landlord who has lawfully obtained possession of a tenant's personal property is guilty of conversion by refusing to deliver possession to the tenant without the tenant first paying landlord's expenses and past-due rent.

Statewide Agencies, Inc. (Statewide or landlord) leased residential real estate to Debra Diggs (Diggs or tenant). Diggs failed to pay November 2000 rent when it was due. The required 3 days' notice to pay rent or quit was given.

On December 5, 2000, landlord filed a petition against tenant seeking unpaid rent, expenses, and immediate possession of the premises. The hearing set for December 13 was not held because

tenant had not been served by that time. Landlord filed an amended petition on December 28, 2000, with a hearing date of January 4, 2001. Service was made by tacking on the door of the leased premises and mailing.

Diggs failed to appear at the January 4, 2001, hearing and the court entered an order of immediate possession and writ of restitution dated January 4, 2001, and filed January 8, 2001. The order and writ found landlord should be restored to immediate possession of the leased premises. It also provided that if tenant failed to remove her property from the premises the sheriff should execute the writ and the landlord could change the locks on the premises and store the remaining possessions of the tenant in the leased premises rather than incur the cost of moving and storing items in another facility.

The sheriff served the order and writ by tacking it on the door of the leased premises on January 9, 2001, and required the tenant to move by January 10, 2001, at 12 p.m. On January 11, 2001, the sheriff evicted the tenant, and the landlord changed the locks to the premises. Tenant requested removal of her personal property and took her purse, medications, and a few other personal items.

At trial Mark McKibben and Kathy Carey, employees of landlord, testified that 15 days after tenant had been evicted, or January 26, 2001, a notice was placed in a newspaper stating tenant's property would be sold after February 12, 2001, unless unpaid rent and expenses were paid to landlord. A copy of the notice was sent to Diggs' last known address within 7 days of publication. McKibben returned several items of tenant's personal property. The remainder of tenant's property was taken to a storage facility.

Landlord sold some of tenant's personal property at rummage sales for $757.19. Landlord's employees purchased tenant's appliances for $275. Unsold items were stored.

On March 20, 2001, landlord filed an amended petition seeking judgment of $1,773.54 for past due rent, damages, late charges, and costs. On April 26, 2001, Diggs filed a pro se answer and counterclaim which was never served on Statewide's counsel. One counterclaim contended landlord had unlawfully converted her

personal property; she requested return of her property or the replacement value and punitive damages of $4,000.

A pretrial hearing was set and at this time an attorney entered his appearance for Diggs. The notice of the trial setting for June 13, 2001, stated: "The parties SHALL exchange a list of all witnesses and copies of all exhibits at least ten days prior to trial." Landlord complied with this notice.

Counsel for both parties first discovered at the June 13, 2001, trial that the tenant had filed counterclaims. Landlord agreed tenant's counterclaims could be heard, but only if her evidence was limited to her testimony because she had not complied with the trial notice. The trial court agreed, and the court trial resulted in the following testimony.

McKibben testified as to the lease, the default, the notice concerning Diggs' property previously referred to, and the sale of part of the property. Landlord claimed past-due rent from November 2000 through January 2001, damage to the premises, and moving and storage expenses for tenant's property. McKibben and Carey stated tenant never asked for the return of her belongings between the date of the eviction and "the date they had statutory authority to sell or dispose of the personal property." They also stated tenant did not offer to pay any rent or damages or ask for the return of her property prior to the sale of her property.

McKibben and Carey were asked at trial if tenant had requested the return of her personal belongings, would they have returned them if the rent was not paid. Landlord claimed both responded that tenant never asked for her belongings, but they would not have returned the items if she had. Tenant contended, and the district court held, that McKibben, Carey, and tenant had testified tenant asked landlord for the return of her property prior to the published notice and was told she could have her property when she paid the rent. Tenant also testified her daughter asked for tenant's belongings, but tenant did not know when she did so. Tenant testified as to the value of her property. There was never any testimony that tenant offered to pay landlord's expenses and past-due rent.

At the conclusion of the hearing, the trial court awarded landlord a judgment against tenant for $1,116.24 for past rent and damages.

As to tenant's conversion claim, it found tenant requested removal of her personal property the day of the eviction and within days after the eviction but landlord refused unless she paid past-due rent. The trial court held the landlord had fully complied with K.S.A. 2001 Supp. 58-2565(d) as to all of the procedures for the sale of tenant's property. Notwithstanding this finding, it held landlord wrongfully converted tenant's property. Tenant's other counterclaims and request for punitive damages were denied.

The trial court scheduled a later hearing for July 2001 concerning the value of tenant's converted property. Landlord objected, contending tenant was bound by the notice of trial and no further evidence by the tenant should be considered. The trial court ruled that further proceedings would be held on tenant's damage claim once she had complied with the notice requirements.

Eleven days before the July hearing, tenant provided a list of witnesses and exhibits that she intended to use at the hearing. Landlord again objected, but the trial court found its notice requirements had now been met and allowed tenant to introduce additional evidence beyond that presented at the June hearing.

Tenant, her ex-husband, and her daughter testified at the July hearing as to the value of her property. Tenant provided a list of her personal property at the leased premises showing a total value of $20,089.97. This included a claim for a diamond ring that had been worth $3,000 sewn into a dress hem. Tenant's ex-husband testified he did not know that she had a diamond ring.

An auctioneer with 20 years' experience testified for landlord as an expert witness as to the value of tenant's property. Based on tenant's list and her unsold property, he valued each item with his valuation totaling $1,512. The trial court ordered landlord to return to tenant all property still in its possession, which it did. It further ordered both parties to provide an agreed list of property not in landlord's possession.

On November 2, 2001, the trial court issued its final order, stating that as it had not received any agreed lists it was left to speculate as to the items claimed to have been converted by the landlord and the extent of the damages incurred by the tenant. Nevertheless, the trial court granted judgment against landlord for the amount

of the sale proceeds of tenant's personal property of $757.19, an additional amount of $5,000 as further damages incurred due to the conversion of her property by landlord, and the return of all items of tenant's personal property in landlord's possession. The money damages were ordered set off by the previous $1,116.24 judgment awarded Statewide against Diggs, resulting in a monetary judgment against Statewide and in favor of Diggs of $4,640.95.

It is from this judgment that Statewide has appealed.

Landlord raises procedural issues on appeal, but we reach and center our decision on whether a conversion existed under the specific facts of this case. This question is one of statutory construction. Landlord contends the trial court erroneously interpreted K.S.A. 2001 Supp. 58-2565(d) and "surrender" as used therein too narrowly. Landlord also argues that it did not convert tenant's property because it relied upon and complied precisely with the terms and provisions of K.S.A. 2001 Supp. 58-2565(d).

We have here clear issues of statutory construction, and we must follow the rules set out in *GT, Kansas, L.L.C. v. Riley County Register of Deeds*, 271 Kan. 311, 316, 22 P.3d 600 (2001):

"This case involves the interpretation of statute, which is a question of law over which our review is unlimited. *Hamilton v. State Farm Fire & Cas. Co.*, 263 Kan. 875, 879, 953 P.2d 1027 (1998). Our rules of statutory construction are well known and require us to interpret a statute to give the effect intended by the legislature, *State ex rel. Stephan v. Kansas Racing Comm'n*, 246 Kan. 708, 719, 792 P.2d 981 (1990), construe the statute to avoid unreasonable results, *Wells v. Anderson*, 8 Kan. App. 2d 431, 433, 659 P.2d 833, *rev. denied* 233 Kan. 1093 (1983), and read the statute to give effect, if possible, to the entire act and every part thereof. *KPERS v. Reimer & Koger Assocs., Inc.*, 262 Kan. 635, 643-44, 941 P.2d 1321 (1997). Ordinary words are to be given their ordinary meaning, and a statute should not be so read as to add that which is not readily found therein or to read out what as a matter of ordinary English language is in it. *Director of Taxation v. Kansas Krude Oil Reclaiming Co.*, 236 Kan. 450, 455, 691 P.2d 1303 (1984)."

In addition, because in this case the Kansas Legislature added specific language to the statute in issue subsequent to a previous decision of the Kansas Supreme Court, we are also cognizant of our standard that "[w]hen the legislature revises an existing law, it is presumed that the legislature intended to change the law as it

existed prior to the amendment. [Citations omitted.]" *Hughes v. Inland Container Corp.*, 247 Kan. 407, 414, 799 P.2d 1011 (1990).

When the Kansas Residential Landlord and Tenant Act (KRLTA), K.S.A. 58-2540 *et seq.*, was enacted in 1975, the legislature eliminated landlord's liens on tenant's personal property as well as distraint for rent except as permitted by K.S.A. 58-2565. K.S.A. 58-2567. See generally Brand, *The New Residential Landlord and Tenant Act*, 44 J.B.A.K. 227, 234-35 (1975). These statutory provisions, primarily K.S.A. 58-2565(d), were central to the Supreme Court's decision of *Davis v. Odell*, 240 Kan. 261, 729 P.2d 1117 (1986). *Davis* discusses in detail the precise questions we face here but under the statutory language of K.S.A. 58-2565(d) as then existed. That language, as we will later see, has been amended in a manner that appears to limit the precedential authority of *Davis* to situations involving abandonment or surrender. It nevertheless remains an important decision in the landlord/tenant area in Kansas, and we will discuss it in some detail.

In *Davis*, the landlord obtained a default judgment for possession of the premises and unpaid rent. A writ of restitution was issued to the sheriff, directing the sheriff to remove the tenants from the premises, restore the possession of the premises to the landlord, and execute upon the tenant's nonexempt personal property to satisfy the judgment. The landlord, under the supervision of the sheriff, took possession of the premises and removed the tenant's personal property. The tenants demanded the return of their property upon their return from work that day, which the landlord refused unless the judgment and moving expenses were paid.

The language of K.S.A. 58-2565(d) at the time of the *Davis* opinion allowed landlord possession of tenant personal property only "[i]f the tenant abandons or surrenders possession of the dwelling unit and leaves household goods, furnishings, fixtures, or other property in the dwelling unit." The *Davis* opinion held that the tenant had not abandoned or surrendered the premises but rather possession in the landlord had been obtained through a forcible detainer action. The landlord had no right to either sell or dispose of the property other than by execution as provided by statute.

Therefore, the landlord had converted the tenant's property by removing it from the premises upon the eviction and was liable for the damages awarded to tenant in a jury trial. 240 Kan. at 270-71.

Subsequent to the *Davis* decision, the Kansas Legislature in 1996 amended K.S.A. 58-2565(d) by inserting the following italicized language:

"(d) If the tenant abandons or surrenders possession of the dwelling unit and leaves household goods, furnishings, fixtures or any other personal property in or at the dwelling unit *or if the tenant is removed from the dwelling unit as a result of a forcible detainer action, pursuant to K.S.A. 61-2301, et seq., and amendment thereto, and fails to remove any household goods, furnishings, fixtures or any other personal property in or at the dwelling unit after possession of the dwelling unit is returned to the landlord,* the landlord ~~takes~~ *may take* possession of the property, store it at tenant's expense and sell or otherwise dispose of the same upon the expiration of ~~thirty (30)~~ *30* days after the landlord takes possession of the property, if at least ~~fifteen (15)~~ *15* days prior to the sale or other disposition of such property the landlord shall publish once in a newspaper of general circulation in the county in which such dwelling unit is located a notice of the landlord's intention to sell or dispose of such property. Within seven ~~(7)~~ days after publication, a copy of the published notice shall be mailed by the landlord to the tenant at the tenant's last known address. ~~Said~~ *Such* notice shall state the name of the tenant, a brief description of the property and the approximate date on which the landlord intends to sell or otherwise dispose of such property. If the foregoing requirements are met, the landlord may sell or otherwise dispose of the property without liability to the tenant or to any other person who has or claims to have an interest in ~~said~~ *such* property, except as to any secured creditor who gives notice of ~~his or her~~ *creditor's* interest in such property to the landlord prior to the sale or disposition thereof, if the landlord has no knowledge or notice that any person, other than the tenant, has or claims to have an interest in ~~said~~ *such* property. During such ~~thirty-day~~ *30* period after the landlord takes possession of the property, and at any time prior to sale or other disposition thereof, the tenant may redeem the property upon payment to the landlord of the reasonable expenses incurred by the landlord of taking, holding and preparing the property for sale and of any amount due from the tenant to the landlord for rent or otherwise." 1996 Sess. Law ch. 113, § 1.

The statute in effect at the time of the *Davis* case stated that the person executing the writ in a forcible detainer action shall restore possession of the premises to the plaintiff "and shall levy and collect the money judgment, if any, the costs and make return, as upon other executions." K.S.A. 61-2311. This statute, and the other forcible detainer statutes, were repealed in 2000. L. 2000, ch. 161, §

117. They were replaced with the current Forcible Detainer Act, K.S.A. 2001 Supp. 61-3801 *et seq.* See L. 2000, ch. 161, §§ 78-85. The current statute for a writ of execution does not have language for levying and collecting the money judgment. See K.S.A. 2001 Supp. 61-3808. It appears that since 2000, K.S.A. 2001 Supp. 58-2565(d) sets forth the method to take possession of the tenant's personal property after the tenant has been evicted under the Forcible Detainer Act. K.S.A. 58-2565(d) was amended in 2000 by deleting the reference to K.S.A. 61-2301 *et seq.* and inserting in its place "sections 78 through 85 and amendments thereto" which are the currently applicable provisions of the Forcible Detainer Act.

With this background, we turn to the facts of the case we face and the contention of the parties. Diggs cites no cases and simply argues landlord's agent was wrong in telling her she could not get her property back without paying the rent and, therefore, must pay the damages assessed for conversion of her property. She further argues the evidence supports this finding.

Statewide makes what sounds like an abandonment and surrender argument that Diggs never asked for her property back within the 30 days after her eviction. This is simply contrary to the facts as found by the trial court. This argument has no merit.

The argument that Statewide makes which does have merit is that it fully and precisely complied with the provisions of K.S.A. 2001 Supp. 58-2565(d). The trial court in its journal entry of June 13, 2001, specifically so found. What the trial court did was to focus on the phrase "fails to remove" in 58-2565(d) and construed that to mean the 1996 amendment allowed a tenant a reasonable time to remove its personal property after being evicted. The trial court's interpretation was consistent with the *Davis* decision. But, it did not recognize that the *Davis* court noted that K.S.A. 58-2565(d) was not a part of the Uniform Residential Landlord Tenant Act and was added at the request of the organization representing landlords. 240 Kan. at 266. Thus, it is clearly shown that K.S.A. 58-2565(d) was from the beginning intended to be an exception to the restrictions of K.S.A. 58-2567.

Under the trial court's interpretation, a tenant would be able to keep his or her personal property on the premises for "a reasonable

time" after being evicted, and the landlord could not change the locks during this time. This would prevent an immediate commencement of the levy against tenant's property to collect unpaid rent and damages after the tenant's eviction. It would give some unknown time for the tenant to remove personal property, require an additional court order, and increase the landlord's damages. It could also possibly raise a question of landlord liability for damage to stored tenant property.

Legislative research does not support the trial court's interpretation and clearly shows the 1996 amendments to K.S.A. 58-2565(d) were in response to the *Davis* case. The 1996 amendment to K.S.A. 58-2565(d) was introduced by the House Judiciary Committee as H.B. 2751. House J. 1996, p. 1468. The bill was summarized as the "landlord may retain possession of tenant['s] personal property in forcible detainer action if tenant does not remove such personal property within 120 hours or possession by landlord. Minutes of the House Judiciary Committee, February 23, 1996, p. 3.

House Representative Vaughn L. Flora stated that H.B. 2751

"would clarify for both landlords and tenants how tenant's abandoned property is to be treated. There was a Kansas Supreme Court decision Davis vs Odell which said that in cases of forcible detainer (an eviction) the tenant[']s property might not be considered abandon[ed].

"This bill simply states that 5 days after the landlord has been awarded possession of the real estate by the court through the action of the Sheriff, the landlord could then go through the process outlined in the Landlord Tenant Act of storage, notification to the tenant and so on. There would be a finite time and process created so both the tenant and the landlord would be aware of how abandon[ed] property is to be treated in cases of forcible detainer." Minutes of House Judiciary Committee, February 23, 1996, Attachment 47.

Patrick DeLapp of the Shawnee County Landlord Association testified:

"Presently, it is in limbo about what to do with the former tenant's belongings. Davis vs Odell, a case heard by the Kansas Supreme Court, ruled that a forcible detainer action 'eviction' may not consider abandonment. What the court did not tell us is what we can do with the property. If it was abandoned we would know what to do with the property . . . .

"The bill will clarify what to do with the property in forcible detainer [actions]." Minutes of the House Judiciary Committee, February 23, 1996, Attachment 48.

DeLapp also indicated landlords had held tenant's property for months after eviction because they did not know what to do with it and feared legal challenges. Minutes of the House Judiciary Committee, February 23, 1996, Attachment 48.

Marie Landry, a manager with the Housing and Credit Counseling, Inc., stated:

"In our experience, landlords have not had a viable option for removing tenant's property when a tenant has been removed from the dwelling unit as a result of a forcible detainer action. We have suggested they use abandonment procedures to protect themselves from personal liability.

"We do foresee the possibility that a question may arise regarding the landlord's right to charge storage fees during the 120 hour period after possession has been returned to the landlord." Minutes of the House Judiciary Committee, February 23, 1996, Attachment 49.

Landry suggested language be included that the landlord cannot recover expenses for the 120-hour period after eviction. Minutes of the House Judiciary Committee, February 23, 1996, Attachment 49.

The subcommittee recommended that H.B. 2751 "be amended so that 'no recoverable expenses may be accrued by the landlord after the tenant is removed from the dwelling unit as a result of a forcible detainer action' and to remove the 120 hour time frame." Minutes of the House Judiciary Committee, February 23, 1996, p. 4. The House Judiciary Committee amended H.B. 2751 by striking " 'within 120 hours,' " and passed the bill as amended. House J. 1996, pp. 1677, 1711. The House of Representatives and the Senate passed H.B. 2751 as amended. House J. 1996, p. 1714; Senate J. 1996, 1590.

Our legislative research did not find an explanation for the deletion of a tenant's right to remove his or her property within 120 hours after eviction. Nevertheless, the legislature did consider giving tenants a specific time to remove their property after eviction and specifically rejected that provision. This clearly shows the trial court's attempt to construe the statute by the inclusion of "a reasonable time" was considered and rejected by the legislature.

The legislature may have realized the problems that could occur by giving the tenant unlimited access to the premises and making the landlord's premises a storage facility. Regardless of the reason and the possible harshness of the statutory provision as written, the conclusion remains the same. The legislature intended to treat non-paying tenants the same regardless of whether the property was left behind when they abandoned or surrendered the premises to the landlord or when they were lawfully evicted by court order. The italicized language earlier set forth which was added to K.S.A. 58-2565(d) by the 1996 Kansas Legislature may in instances like ours here be to the tenant's detriment, but the plain language of the last sentence of K.S.A. 58-2565(d) controls in both instances:

"During such thirty-day period after the landlord takes possession of the property, and at any time prior to sale or other disposition thereof, the tenant may redeem the property upon payment to the landlord of the reasonable expenses incurred by the landlord of taking, holding and preparing the property for sale and of any amount due from the tenant to the landlord for rent or otherwise."

This language has been in the statute since its enactment. It now clearly applies where tenant removal is required by a forcible detainer action. The 1996 amendment to K.S.A. 58-2565(d) and the 2000 amendments to the Forcible Detainer Act have in effect authorized landlords to take the precise action that Statewide took in this case.

We hold the trial court erred in its interpretation of K.S.A. 2001 Supp. 58-2565(d) and is reversed as to its judgment awarding Diggs damages on her conversion claim. This will require reinstatement of landlord's judgment against tenant, which was not appealed.

Reversed and remanded to the trial court with instructions to reinstate the judgment in favor of Statewide Agencies, Inc., and against Debra Diggs for $1,116.24 and costs.