No. 46,529

F. E. Botkin, John Botkin, Dale Botkin, and Donald Botkin, partners d/b/a Botkin Grain Company, *Appellants*, v. Kickapoo, Inc., a corporation, and James Clarke, *Appellees*.

(505 P. 2d 749)

Opinion filed January 20, 1973.

*Ronald D. Albright*, of Anthony, argued the cause and was on the brief for the appellants.

*Marion P. Mathews*, of Winfield, argued the cause, and *Lawrence E. Christenson* and *William A. Taylor, III*, both of Winfield, were with him on the brief for the appellees.

The opinion of the court was delivered by

HARMAN, C.: This is an action in replevin and for damages growing out of the purchase of feed mill equipment. Trial to the court resulted in judgment for defendants from which plaintiffs have appealed.

Upon issues framed by the pleadings the trial court ruled plaintiffs had abandoned the property which was the subject of the suit and further that their claim for relief was barred by the statute of limitations and by the statute of frauds.

Plaintiffs were partners engaged in the grain business at Argonia, Kansas. Their spokesman and actor in the transaction in question as well as their witness at trial was partner John Botkin. Defendant James Clarke was president of Kickapoo, Inc., a corporation which had its principal place of business at Winfield, Kansas. Clarke was Kickapoo's spokesman, actor and witness. In some respects the litigants' trial testimony was undisputed but was at variance in others. We summarize that necessary to disposition.

On July 22, 1966, for an agreed price of $8,000 plaintiffs purchased from defendant Kickapoo certain feed mill equipment located in a metal warehouse building. This property consisted of all equipment in the building except the liquid fertilizer equipment and included a pellet mill, hammer mill, dryer, air system, mixer, conveyors, car unloader, tank with sacking scales and electrical switches and starters. The contract of purchase was oral. Plaintiffs paid $1,000 on July 22, 1966, and the balance of $7,000 on October 11, 1966. Plaintiffs were to dismantle and remove the equipment; however, the evidence differed as to when removal was to be done. Clarke testified removal was to be made within six months from date of purchase inasmuch as Kickapoo needed the space for storage of bulk fertilizer and had sold the equipment at a lower price in order to have the space cleared; John Botkin testified Clarke agreed to let him leave the equipment in the warehouse until Kickapoo needed the space or until Clarke notified him to remove it. Sale of the equipment had been initially negotiated by a feed equipment salesman acting as agent for and paid a commission

by Kickapoo. At the time of the purchase plaintiffs contemplated use of the equipment in a new feed mill to be established by them in Argonia but this plan never materialized and plaintiffs later requested the same salesman to attempt to resell the equipment on their behalf.

Plaintiffs removed certain major items of the equipment within six months—some in 1966 and some in 1967. Clarke testified that in the fall of 1966 he asked plaintiffs to remove the equipment and again in the spring of 1968 he requested by telephone that plaintiffs remove any further equipment they wanted. Botkin testified he did not recall that Clarke ever requested removal of the equipment. Plaintiffs made no exact inventory of the property until in March, 1968. In April, 1968, plaintiffs spent two or three days dismantling and removing further equipment. Clarke was notified by plaintiffs of this pickup. Plaintiffs made no further effort to remove any property until a Saturday in August, 1969, at which time the equipment salesman accompanied by a local junk dealer attempted to load some items but were not allowed by Clarke to do so. Then on Sunday morning of the following week John Botkin and two employees were in the process of removing a boiler and an auger when they were prevented from doing so by the Cowley county sheriff acting at Clarke's behest. In neither of these latter instances had plaintiffs contacted Clarke regarding any further removal.

The warehouse in question was owned by Kickapoo but was on ground leased by it from the railroad. The building could not be locked and had been open to entry by the public over a number of years. The roof leaked, property inside the building was subjected to damage by the elements and the remaining equipment had in fact deteriorated.

Plaintiffs' suit was commenced October 3, 1969.

The trial court entered findings of fact and conclusions of law in accord with the foregoing recital and, as indicated, ruled against plaintiffs on three separate grounds, any one of which, if sustainable, would require affirmance of the ruling.

The trial court specifically found plaintiffs had abandoned any equipment remaining on Kickapoo premises after their removal of property in April, 1968. We deal first with that issue.

The law respecting abandonment as applied to property and property rights is well established. Generally, abandonment is the act of intentionally relinquishing a known right absolutely and with-

out reference to any particular person or for any particular purpose. Abandoned property is that to which the owner has voluntarily relinquished all right, title, claim and possession, with the intention of terminating his ownership, but without vesting it in any other person and with the intention of not reclaiming future possession or resuming its ownership, possession or enjoyment. In order to establish an abandonment of property, actual relinquishment accompanied by intention to abandon must be shown. The primary elements are the intention to abandon and the external act by which that intention is carried into effect. Although an abandonment may arise from a single act or from a series of acts the intent to abandon and the act of abandonment must conjoin and operate together, or in the very nature of things there can be no abandonment. The intention to abandon is considered the first and paramount inquiry, and actual intent to abandon must be shown; it is not enough that the owner's acts give reasonable cause to others to believe that the property has been abandoned. Mere relinquishment of the possession of a thing is not an abandonment in a legal sense, for such an act is not wholly inconsistent with the idea of continuing ownership; the act of abandonment must be an overt act or some failure to act which carries the implication that the owner neither claims nor retains any interest in the subject matter of the abandonment. It is not necessary to prove intention to abandon by express declarations or by other direct evidence; intent to abandon property or rights in property is to be determined from all the surrounding facts and circumstances. It may be inferred from the acts and conduct of the owner and from the nature and situation of the property. Mere nonuse of property, lapse of time without claiming or using property, or the temporary absence of the owner, unaccompanied by any other evidence showing intention, generally are not enough to constitute an abandonment. However, such facts are competent evidence of an intent to abandon and as such are entitled to weight when considered with other circumstances (1 Am. Jur. 2d, Abandoned, Lost, Etc., Property, § 1, pp. 3-4, § 15, pp. 15-16, § 16, pp. 16-17, § 40, p. 32, § 41, pp. 33-34).

Our cases accord with the foregoing (*Chapman v. Continental Oil Co.*, 149 Kan. 822, 89 P. 2d 833; *Kimberlin v. Hicks*, 150 Kan. 449, 94 P. 2d 335; *Moore v. Hayter*, 153 Kan. 1, 108 P. 2d 495; *Rodgers v.*

*Crum*, 168 Kan. 668, 215 P. 2d 190; *Storm v. Barbara Oil Co.*, 177 Kan. 589, 282 P. 2d 417).

Within the scope of the foregoing principles, and except where the facts are undisputed and only one inference can be drawn, the issue of abandonment ordinarily presents a question of fact to be determined by the fact finder. We view the case at bar in this light. There was some dispute in the litigants' versions of events and some varying inferences to be drawn from the conduct of plaintiffs as revealed by facts not in dispute. There was evidence the equipment in question was of a specialized nature designed for use in a specific industry, as found by the trial court; it was of a type subject to obsolescence and some of it had become obsolete; when plaintiffs purchased it they were expecting to use it within six months for its intended purpose in construction of their own feed mill, which plan never materialized; plaintiffs were aware of defendants' contemplated use of space in their warehouse for a different purpose; when plaintiffs' plan failed to materialize they made efforts to resell the equipment and did sell major items; there was disputed evidence as to the fruitlessness of further efforts of sale over a considerable length of time; the equipment was left open to trespassers and vandals and unguarded from the weather and consequently had deteriorated to the point it had no more than salvage value; items of personal property had been stolen from the building; more than ample time for removal under the terms of the contract had been allowed; plaintiffs removed items of value in response to defendants' request that the building be vacated. Plaintiffs attempted to show that in April, 1968, when they last removed equipment, they left dismantling equipment in the building but here again defendants presented evidence in opposition.

Treating the issue as essentially a fact question we conclude the evidence sufficiently supported the trial court's finding of abandonment. This conclusion renders unnecessary consideration of the other bases of the judgment appealed from.

Judgment affirmed.

APPROVED BY THE COURT.