(303 P.3d 1272)
No. 107,738

BANK OF BLUE VALLEY, *Appellee*, v. DUGGAN HOMES, INC., *et al.*,
*Defendants*, (TORY GRAHAM, INC., *et al.*,) *Appellants*.

—

Opin-
ion filed April 26, 2013.

*William J. Gotfredson*, of Monaco, Sanders, Gotfredson, Racine & Barber, LC, of Kansas City, Missouri, for appellants.

*Stewart M. Stein* and *Michele M. O'Malley*, of Stinson Morrison Hecker LLP, of Kansas City, Missouri, for appellee.

Before BRUNS, P.J., GREEN and BUSER, JJ.

GREEN, J.: This is a summary judgment case involving a foreclosure action by the Bank of Blue Valley (the Bank). Over the course of several years, Duggan Homes granted multiple mortgages to the Bank in part consideration for loans to fund its real estate development projects in Johnson County. The loans were also secured by personal guaranties from John Duggan and his spouse. Duggan Homes later defaulted on the loans, and the Bank sued to collect on the notes and the Duggans' guaranty agreements. The Bank also sought to foreclose on the mortgages. After the suit was filed, the Bank and the previously mentioned parties entered into a settlement agreement. Under the terms of the settlement agreement, Duggan Homes agreed to convey several properties to the Bank in full satisfaction of the indebtedness. The Bank took the properties subject to the judgment liens of several subcontractors of Duggan Homes.

Later, the Bank filed an amended petition naming the subcontractors as defendants. The amended petition sought to foreclose the mortgages that were included in the Bank's and Duggan Homes' settlement agreement.

The Bank moved for summary judgment, and the subcontractors also filed a cross-motion for summary judgment. The subcontractors maintained that the Bank was not entitled to foreclose on its mortgages. The trial court held that although the Bank "identifies the cause of action as a foreclosure," the Bank "simply desires to quiet title to the property." As a result, the trial court granted summary judgment in favor of the Bank and quieted title to the real property in the Bank. On appeal, the subcontractors contend that the trial court erred in granting summary judgment in favor of the Bank based on a quiet title theory that was never requested nor pleaded by the Bank. We agree. Accordingly, we reverse and remand.

The Bank entered into three separate loan agreements with Duggan Homes. The Bank loaned money for home construction of three properties in Johnson County, Kansas.

First, on January 6, 2004, Duggan Homes executed a promissory note for Loan Number 9226510 in favor of the Bank in the principal amount of $210,000. To secure this loan, Duggan Homes executed a construction mortgage in this same amount in favor of the Bank, which was recorded on January 13, 2004, with the Johnson County Register of Deeds regarding 23854 W. 126th Terrace, Olathe, Kansas.

Second, on April 5, 2007, Duggan Homes executed a promissory note for Loan Number 9242350 in favor of the Bank in the principal amount of $306,360. To secure this obligation, Duggan Homes executed a mortgage in favor of the Bank in the same principal amount, which was recorded on April 9, 2007, with the Johnson County Register of Deeds regarding property located at 3203 West 155th Terrace, Overland Park, Kansas.

Finally, on April 5, 2007, Duggan Homes executed a promissory note for Loan Number 9242360 in favor of the Bank in the principal amount of $340,760. Duggan Homes executed a mortgage in the same principal amount in favor of the Bank, which was recorded on April 9, 2007, for property located at 3107 West 155th, Overland Park, Kansas.

As additional security for the Duggan Homes' notes, the Bank obtained guaranty agreements from John Duggan and his spouse. Sometime after the execution of these three transactions, Duggan Homes defaulted on all three notes. On December 19, 2008, the Bank sued Duggan Homes seeking to collect on the notes and Duggans' guaranty agreements. The Bank also sought to foreclose on the three mortgages.

In December 2009, the Bank and Duggan Homes reached a written settlement agreement. As consideration for the settlement agreement, the Bank agreed to accept the conveyance of the Dugan Homes' properties along with a workout note "in full satisfaction of and payment of the Duggan Homes Notes and any and all indebtedness of Duggan Homes under the Duggan Homes Loan Documents." Moreover, Duggan Homes and its guarantors

agreed to release any and all claims against the Bank under the terms of the settlement agreement. In exchange for these promises, the Bank agreed to release Duggan Homes and its guarantors from all claims. The Bank further agreed to report to credit agencies that all indebtedness of Duggan Homes and its guarantors were "satisfied."

The settlement agreement also included multiple no merger provisions. Indeed, Paragraph 18 of the settlement agreement stated the following:

> "No Merger. The parties acknowledge and agree that notwithstanding the transaction contemplated by this Agreement, the Notes and Mortgages will remain in full force and effect after the transactions contemplated by this Agreement have been consummated. The parties further acknowledge and agree that the interest of the Lender, its nominee or assigns in the Duggan Homes Properties created by all of the conveyances provided for herein will not merge with the interest of the Lender in the Duggan Homes Properties under the Mortgages. *It is the express intention of each of the parties (and all of the conveyances provided for herein will so recite) that such interest of the Lender in the Duggan Homes Properties will not merge, but shall be and remain at all times separate and distinct, notwithstanding any union of said interest in the Lender at any time by purchase, termination or otherwise, and that the lien held by the Lender against the Duggan Homes Properties created by the Mortgages and Notes will remain at all times valid and continuous liens against the Duggan Homes Properties.*" (Emphasis added.)

The involved parties signed the settlement agreement with the previously mentioned terms, and Duggan Homes conveyed a special warranty deed to the Bank granting the Bank title to the properties.

Before entering into the settlement agreement with the Bank, Duggan Homes tried to settle several disputes that it had with its subcontractors. Specifically, on January 22, 2009, Duggan Homes filed a declaratory judgment action against the following subcontractors: (1) Joe Kilowatt, Inc.; (2) United Heating and Cooling, Inc.; (3) United Plumbing and Service Co., Inc.; (4) Allegiance Capital Group I, LLC; (5) Graham-Welch Associates, Inc.; (6) Tory Graham, Inc.; and (7) Fountain Glass, Inc. (collectively subcontractors). On April 28 and 29, 2010, the trial court entered separate orders granting the subcontractors judgment liens on Duggan Homes' properties. Duggan Homes and the Bank's settlement

agreement stated that the Bank took the conveyed properties "subject to the lien of general real estate taxes, and all other encumbrances of record."

On October 1, 2010, the Bank filed a second amended petition naming the subcontractors as defendants. The amended petition sought to foreclose the three mortgages that were included in the Bank and Duggan Homes' settlement agreement. Eventually, the Bank moved for summary judgment. The subcontractors then filed a competing motion for summary judgment. At the hearing on the Bank's summary judgment motion, the trial court sought to clarify the relief that the Bank was seeking. After the Bank explained that it sought to clear title to the property to make it saleable, the trial court requested that the Bank file an amended memorandum in support of its summary judgment motion. Under the amended memorandum, the Bank stated that it brought its action "for the purpose of clearing title to real property it accepted from its borrower, Duggan Homes, Inc."

Following the additional briefing of the parties, the trial court in its memorandum decision dated November 18, 2011, granted the Bank's summary judgment motion. The trial court ordered title to the property to be quieted in the name of the Bank. In response to the trial court's judgment quieting title in favor of the Bank, the subcontractors moved to alter or to amend the findings and the judgment.

The subcontractors argued that the Bank had never sought relief under a quiet title theory and asked the trial court to vacate its judgment quieting title in favor of the Bank. In responding to the subcontractors' motion to alter or to amend the findings and the judgment, the Bank contended that under K.S.A. 60-208(f) and K.S.A. 60-254(c), the trial court had "the ability and responsibility to dispense justice to provide relief that will satisfy a claimant, even if that relief was not plead [sic]." Relying on these two statutes, the trial court denied the subcontractors' motion to alter or to amend the findings and the judgment. In its ruling the trial court stated: "[A]lthough [the Bank] was not entitled to foreclose per se because the underlying debt secured by the mortgage was released prior to [Bank's] motion for summary judgment, [Bank] may still

establish priority between its mortgage and [the subcontractors'] judgment liens."

The subcontractors—except for Fountain Glass, Inc.—timely filed a joint notice of appeal from the trial court's ruling.

I. *Did the trial court err in granting summary judgment in favor of the Bank on a theory of quiet title that was never requested or pleaded by the Bank?*

When the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law, summary judgment is appropriate. The trial court is required to resolve all facts and inferences which may reasonably be drawn from the evidence in favor of the party against whom the ruling is sought. When opposing a motion for summary judgment, an adverse party must come forward with evidence to establish a dispute as to a material fact. To preclude summary judgment, the facts subject to the dispute must be material to the conclusive issues in the case. On appeal, the same rules apply; summary judgment must be denied if reasonable minds could differ as to the conclusions drawn from the evidence. *Osterhaus v. Toth*, 291 Kan. 759, 768, 249 P.3d 888 (2011).

In the Bank's first motion for summary judgment, the Bank sought (1) an in rem judgment against Lots 16, 154, and 155 based on alleged debt due from Duggan Homes; (2) *"foreclosure* of the mortgages described in the Bank's Petition and Memorandum in Support filed concurrently herewith"; (3) "judgment against the Subcontractor Creditors that each does not hold a valid lien interest" or, in the alternative, "establishing that their respective judgment liens [are] second and subordinate to Plaintiff's first and priority Mortgages and *foreclosing* said liens"; and (4) "judgment against Fountain Glass" establishing that "its judgment lien is second and subordinate to Plaintiff's first and priority Mortgages and foreclosing said lien." (Emphasis added.)

The Bank's amended motion for summary judgment requested relief as follows: "for judgment against the Subcontractor Creditor

defendants that each does not hold a valid judgment lien interest . . . or in the alternative establishing their respective judgment liens as second and subordinate to Plaintiff's first and priority Mortgages and *foreclosing* said liens." (Emphasis added.)

Absent from the Bank's initial motion for summary judgment, its amended motion for summary judgment, and its accompanying memoranda is any request for or argument that the Bank is seeking an order quieting title in the property. Indeed, nowhere in the Bank's second amended petition does the Bank ever assert a cause of action for quiet title or request that the trial court enter an order to "quiet title to the property." To the contrary, for example, the Bank, in count seven of its second amended petition for "Mortgage Foreclosure 3107 W. 155th Terrace," prayed that this property

"be ordered sold according to the law and that the proceeds from the sale of [*sic*] the 3107 W. 155th Terrace be applied as follows:

    a. to the Payment of costs of this action of said sale;

    b. to the Payment of any and all taxes and assessments, all interests and penalties thereon, that may be found due on the real property on the sale date;

    c. to the payment of *the judgment* of the Bank of Blue Valley, together with interest thereon; and

    d. the remainder, if any to be paid into the Court . . . ." (Emphasis added.)

Each count for foreclosure in the Bank's second amended petition contains the same prayer but for the address of the property. Indeed, the Bank acknowledged in open court that it desired to "do a foreclosure sale." "In the absence of a pretrial order, the issues raised by the facts alleged in the petition control the scope of the lawsuit." *Febert v. Upland Mutual Ins. Co.*, 222 Kan. 197, Syl. ¶ 1, 563 P.2d 467 (1977). The "trial court has no jurisdiction to hear issues which are not raised by the pleadings or defined at [a] pretrial conference" unless the parties consent to the new issues. 222 Kan. at 200.

Here, the Bank has never sought or established a basis to obtain quiet title to the three properties in question. Rather, the Bank in its second amended petition, in its initial motion for summary judgment, and in its amended motion for summary judgment has sought to foreclose the mortgages and to obtain an order foreclosing the subcontractors' judgment liens on the properties. More-

over, no pretrial order has ever been entered in this matter allowing the Bank to assert a claim for quiet title. Finally, the Bank concedes in its brief that it never used the word "quiet" in its pleadings.

In denying the subcontractors' motion to alter or to amend the findings and the judgment of the trial court's order of summary judgment, the trial court appears to have relied on K.S.A. 2012 Supp. 60-208(e) and K.S.A. 2012 Supp. 60-254(c). Under K.S.A. 2012 Supp. 60-208(e), it states that "[p]leadings must be construed so as to do justice." Moreover, K.S.A. 2012 Supp. 60-254(c) states in pertinent part: "Every other final judgment should grant relief to which every party is entitled, even if the party has not demanded that relief in its pleadings." Although the Bank contends that these statutes give the trial court "the ability and the responsibility to dispense justice to provide relief that will satisfy a claimant, even if that relief was not plead [*sic*]," the Bank cites no case authority in support of this proposition. Nevertheless, our Supreme Court in *In re Marriage of Brown*, 247 Kan. 152, 168, 795 P.2d 375 (1990), held that 60-254(c) did not allow an award of money for unjust enrichment in an action when only a claim for divorce and maintenance was pleaded. Thus, the Bank's contention under 60-254(c) runs counter to the *Brown* holding.

Here, the trial court surmised that "[a]lthough Plaintiff identifies the cause of action as a foreclosure, Plaintiff simply desires to quiet title to the property." The trial court, however, cannot supply the claim by "supposition." *Meyer Land & Cattle Co. v. Lincoln County Conservation Dist.*, 29 Kan. App. 2d 746, 756, 31 P.3d 970 (2001) (providing that even under notice pleading, the "claim is to be provided by the petitioner and not by the supposition of the court"), *rev. denied* 273 Kan. 1036 (2002). The trial court "cannot supply a cause of action when it is clear from reading the entire pleading that it was not meant to be pleaded and it was not contained in the pleading in any understandable form." 29 Kan. App. 2d at 756.

Accordingly, because the subcontractors objected to the quiet title theory and because they never consented to the use of this theory, the trial court erred in granting the Bank's motion for summary judgment.

For the sake of argument, even if the trial court had the authority to convert the Bank's pleaded foreclosure action into a quiet title action, it still did not clear title to the real properties. Although the Bank argues in its brief that "Kansas law has long provided that a quiet title action is appropriate to clear property title of mechanics' liens," this statement is too broad. Moreover, the statement is inapplicable to this case. See 5 Gard, Casad and Mulligan, Kansas Law and Practice, Kansas C. Civ. Proc. Annot. § 60-1002(b), p. 136 (5th ed. 2012) (K.S.A. 60-1002[b] "extends the right to the property owner to bring an action to quiet title against any and all types of liens *which have ceased to exist or which have become barred* [by a statute of limitations], whether the lien was that of a mortgage or of some other character." [Emphasis added.]).

Here, the Bank made no argument that the subcontractors' liens had ceased to exist or had become barred by a statute of limitations. Moreover, the trial court's holding was not based on either of those two grounds. The trial court simply held that the Bank's mortgages were "senior to the [subcontractors'] judgment liens." Thus, the trial court's quiet title ruling was inadequate to strip the real property of the subcontractors' liens. Only through a foreclosure action can a senior lienholder strip the real property of known or recorded junior liens. See *Lenexa State Bank & Trust Co. v. Dixon*, 221 Kan. 238, 245-46, 559 P.2d 776 (1977), requiring holders of junior liens which are known or of record to be made party defendants in a first mortgage foreclosure action in order for the purchaser at foreclosure sale to get a clear title unencumbered by the secondary liens.

Nevertheless, as the Bank points out in its brief, the foreclosure issue is not squarely before this court because the Bank has abandoned its foreclosure action and now relies entirely on the trial court's alternative ground of quiet title for granting relief in the Bank's favor:

"Because the district court did not address the issue of whether the Bank could foreclose its mortgages in its November 18th judgment, it is inappropriate for this Court to render an advisory opinion. Further, in the Subcontractor[s'] notice of appeal, the Subcontractor[s'] only appeal from the grant of Summary Judgment in favor of the Bank and did not appeal the denial of their Cross-Motion For

Summary Judgment. Thus, the determination of whether the Bank can foreclose on its mortgages must, if ever, be left for another day."

We will heed the Bank's advice and not reach out to decide an issue not squarely before this court.

Reversed and remanded.