NOT DESIGNATED FOR PUBLICATION

No. 126,667

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

AARON CONARD and NICHOLE CONARD,
*Appellees*,

v.

NEOSHO DRILLING and NORMAN HOUSTON,
*Appellants*.

MEMORANDUM OPINION

Appeal from Cherokee District Court; MARADETH FREDERICK, judge. Submitted without oral argument. Opinion filed February 14, 2025. Affirmed in part, reversed in part, and remanded with directions.

*Lyndon W. Vix*, of Fleeson, Gooing, Coulson & Kitch, L.L.C., of Wichita, for appellants.

*Robert E. Johnson, II*, of Johnson Schowengerdt, P.A., of Iola, for appellees.

Before ARNOLD-BURGER, C.J., GARDNER and COBLE, JJ.

PER CURIAM: This appeal arises from a dispute between homeowners Aaron and Nichole Conard and Norman Houston. The Conards hired Houston to drill two water wells. After he was unable to complete the work, the Conards prevailed in a lawsuit they filed against Houston asserting claims for quiet title, breach of contract, negligence, and fraudulent misrepresentation. Houston was unsuccessful on his counterclaims for conversion, unjust enrichment, and breach of contract.

1

After reviewing the issues presented, we reverse the district court's ruling on the Conards' quiet title claim and reverse and remand the court's ruling on Houston's conversion counterclaim but affirm all other rulings.

FACTUAL AND PROCEDURAL HISTORY

In January 2019, the Conards hired Houston—through his company Neosho Drilling—to dig water wells on their property. At their initial meeting, Houston came to the Conards' residence to review the locations for the wells and discuss the drilling. After Houston assured Aaron that he was an insured driller, Aaron paid Houston $4,560 for the materials to drill the wells.

Houston arrived at the Conards' residence in April 2019 with his drilling rig—a 60-to-70-foot mast and trailer attached to a 1996 Ford truck—to perform the work. Houston completed the first well the next day, then began working on the second well a week later. Before the work was completed, Aaron paid Houston in advance for the completion of both wells in the amount of $10,160.

Unfortunately, Houston was unable to finish the second well because in the early morning hours on May 7, 2019, the drilling rig fell over during a storm, damaging a carport at the Conards' residence. Aaron immediately contacted Houston, who arrived several hours later and explained upon arrival that he learned his insurance on the truck and drilling rig had lapsed two months prior. The parties discussed how to stand up Houston's truck and drilling rig but could not come to an agreement. After further disagreements, Aaron advised Houston in June 2019—on the advice of law enforcement and his home insurance provider—not to attempt removing the drilling rig from the property and that any further attempts to do so without proof of insurance would be considered trespassing. Although Houston sent a text message to Aaron in July 2019

2

stating that he could obtain insurance, he did not provide proof of insurance at any point thereafter.

In September 2019, the Conards filed this lawsuit, raising five claims: quiet title, negligence, breach of contract, trespass, and fraudulent misrepresentation. The primary form of relief requested by the Conards was an order quieting title to the truck and drilling rig in their name to compensate for Houston's alleged acts, including failure to complete the work or remove his personal property from their residence, failure to properly secure the drilling rig, and misrepresenting that he had insurance.

After Houston filed a pro se answer in November 2019 denying any wrongdoing, the Conards filed a notice of hearing on a motion for default judgment to occur in February 2020. When Houston did not appear at that hearing, District Judge Oliver Kent Lynch entered a default judgment in the Conards' favor, finding they were "entitled to judgment and relief sought in their Petition and therefore the Court hereby Quiets title to the 1996 Ford VIN 1FDZY82E0TVA26107 and the same shall be the sole property of the Plaintiffs named herein." The court also ordered "judgment for trespass, which includes damages and for the Plaintiff's attorney fees in the amount of $4,500.00."

About four months later, the Conards hired Letts & Demery, another drilling company, to complete the work that Houston had been unable to complete. As compensation, the Conards traded Houston's truck and drilling rig to Letts & Demery.

In September 2020, an attorney entered their appearance for Houston and moved to set aside the default judgment. In short, the motion alleged the Conards failed to comply with statutory and Kansas Supreme Court rules requiring proper service of a motion for default judgment. Houston also contended the default judgment should be set aside due to excusable neglect and because he had meritorious defenses to the claims

3

alleged in the petition. After the parties filed additional responses, District Judge Lynch agreed with Houston and entered an order in January 2021 vacating the default judgment.

Houston then filed an amended answer, also raising counterclaims for conversion, unjust enrichment, and breach of contract. Houston asserted in these counterclaims that the truck and drilling rig constituted separate and distinct items of personal property, along with various smaller items contained within the truck. Thus, because the court's default judgment pertained only to the truck itself, Houston argued the Conards had improperly taken ownership of his other personal property and sold it.

District Judge Lynch held the bench trial over Zoom as scheduled, at which the Conards were represented by counsel and Houston appeared pro se.

Through their testimony, the Conards and Houston agreed about many aspects of the facts. Houston admitted that he had an agreement with the Conards to dig the two wells and was paid in advance, but that he was unable to complete the job because his drilling rig fell over. Houston also acknowledged that he told Aaron at their initial meeting in January 2019 that he had insurance coverage but claimed that he only became aware that the coverage had lapsed about "an hour or two" after the drilling rig fell over. Houston also did not dispute that the Conards' carport sustained damage when the drilling rig fell, that the Conards ended up paying a $1,000 deductible to repair the damage to the carport, or that the parties could not come to an agreement about how to extricate the truck and drilling rig from the Conards' property.

That said, the parties disputed some of the material facts. Aaron testified to his belief that Houston had not properly secured the rig, stating his experience working "in a facility where we follow OSHA regulations very closely" gave him the impression that Houston was not meeting those regulations. According to Aaron, Houston's duties as the "controlling entity" were "to lower the mast when inclement weather is coming" and

4

"inspect the rigging, the outriggers and the security of the rig every day," which had not been done for more than 30 days. Houston disagreed, stating that the rig had tipped over because of "an unforeseen condition . . . under the ground" and that he had secured the rig by putting "blocks underneath the outriggers. "

In addition, while it was undisputed that the parties could not agree how best to extricate the truck and drilling rig from the Conards' property, they provided differing accounts of how that conversation progressed. Aaron stated he provided Houston immediately with the phone number for Taylor Crane & Rigging, which Houston declined because their quote to stand up and remove the equipment was too expensive. When the Conards' homeowner's insurance provider, Farm Bureau, agreed to pay to have a different recovery company stand up the truck and drilling rig—allowing Houston to then retrieve it from the driveway—Aaron stated that Houston refused and threatened to sue both recovery companies if they touched his truck. But according to Houston, he explained that he told Taylor Crane he would sue them if they attempted to "lift it all up in one piece," because it would cause additional damage to his equipment. In any event, Houston's threat resulted in someone from Taylor Crane telling Aaron they would not perform any action related to the truck and drilling rig without a complete hold harmless agreement signed by Farm Bureau, Aaron, and Houston.

The parties also agreed that Houston had proposed using four-wheel drive tractors owned by the Conards and a neighbor to stand up the rig—which would also require removing some trees—but the Conards refused. Although Aaron stated it was Houston's idea, Houston testified that the Conards' neighbor had offered to help and Aaron "just said no, no, no we're not." Houston next proposed removing the mast from the truck himself and standing up the truck by using the tractors, which Aaron also refused because Farm Bureau had advised them not to touch the truck or use their own equipment to remove it unless Houston was fully insured because of the risk of additional damages to

5

the Conards' property. Houston, however, claimed that Aaron simply wanted to be "in control" because he was upset about jokes Houston had made.

Aaron advised Houston by text message in June 2019 that he would be trespassing if he entered the property and not to attempt retrieving the truck without an insured crane company or proof of insurance. Although Houston sent a message in July 2019 stating that he could obtain insurance again, at no point did he ever provide the Conards with proof of insurance. Thus, the truck and drilling rig remained in the Conards' yard until June 2020, when they arranged for another drilling company to complete the second well and traded the truck and drilling rig as compensation based on the default judgment they obtained in February 2020. On this point, Houston stated the Conards had sold the drill rig and all its contents "illegally" and he valued the total estimated loss suffered as between $225,000 and $230,000. Houston also had offered to pay for up to $2,600 of damage sustained to the Conards' carport, but that changed once he was told he would be arrested for trespassing because "I thought well if I give him the $2,600 then I'm out $2,600 and I still won't have my drill rig."

After the parties finished presenting their evidence, District Judge Lynch stated closing arguments would be unnecessary and announced he would be "find[ing] generally for the Plaintiffs on the petition and grant[ing] the prayer of the petition, specifically including quiet title in the equipment to the Plaintiffs." District Judge Lynch further stated he would be ordering Houston to pay $21,000 for the Conards' attorney fees and $1,000 to cover the insurance deductible. Before ending the hearing, District Judge Lynch directed the Conards' counsel to prepare a journal entry pursuant to Supreme Court Rule 170.

On July 9, 2021, the Conards' counsel electronically filed a notice of submission of journal entry pursuant to Rule 170 and a certificate of service reflecting the same was

6

mailed to Houston. Four days later, the Conards' counsel electronically filed an amended notice and likewise mailed it to Houston.

On July 29, 2021, a new attorney entered an appearance for Houston. The next day, District Judge Lynch approved and filed the journal entry submitted by the Conards' counsel, which found "[b]ased on the breach of contract, trespass, fraudulent misrepresentation, negligence, and Quiet title," that the Conards were entitled to have the title to the truck quieted in their name as their sole property and for Houston to pay $21,000 in attorney fees and $1,000 for the insurance deductible paid to repair the damage to their residence. The next day, District Judge Lynch retired.

About a week later, Houston's new counsel filed a motion to set aside the district court's journal entry for noncompliance with Rule 170, contending he had timely submitted objections to opposing counsel, who did not acknowledge receipt of the objections or attempt to confer before the court approved the order. Houston later filed a motion to alter or amend the journal entry, arguing (1) the court's order lacked adequate findings of fact and conclusions of law to support the judgment, (2) the court's quiet title judgment was incorrect as a matter of law, (3) the Conards were not entitled to relief on their tort claims, (4) the court's attorney fees award was unsupported by any evidence; and (5) the court failed to rule on his counterclaims. Alternatively, Houston moved for a new trial on the merits.

In October 2022, District Court Judge Maradeth Frederick entered an order vacating the July 2021 journal entry "in whole," noting that Houston had voluntarily withdrawn the motion to set the journal entry aside and wished to proceed solely on the motion to alter or amend. In particular, Judge Frederick found District Judge Lynch's prior journal entry "is not adequately supported by findings of fact and conclusions of law, made either at the bench trial held in this matter or in the journal entry, as required by K.S.A. 60-252(a)(1) and Kan. Sup. Ct. R. 165(a)," and directed the parties to submit

7

proposed findings of fact and conclusions of law within 30 days, after which the court would issue a judgment. The court further found Houston's remaining arguments in his motion to alter or amend or for new trial were "deemed moot as a result of the vacating of the judgment." Lastly, the court noted "the parties are free to file post-judgment motions on any available grounds, including those previously raised in the motions presently before the Court."

Both parties submitted their proposed findings of fact and conclusions of law in December 2022. Although the record shows the district court held a hearing to consider the parties' oral arguments on the proposed findings of fact and conclusions of law on March 31, 2023, no transcript for that hearing appears in our record.

In May 2023, the district court entered its final journal entry granting judgment in the Conards' favor. Judge Frederick began the order by recounting the procedural history of the case and explaining the parties had "agreed the Court must rule based upon the record." Thus, based on "a full review of the court file, the parties' proposed findings of fact and conclusions of law, and the trial transcript filed herein," the court stated "[e]xcept as otherwise noted," it was adopting the Conards' proposed findings of fact and conclusions of law on the claims in their petition "in full."

Relevant to this appeal, the court explained that it was quieting "[t]he title to the 1996 Ford truck . . . in favor of Plaintiffs based upon the facts and conclusions in Plaintiffs' proposed findings of facts and conclusions of law." Because the uncontroverted evidence showed that "the drilling rig was attached to the truck and the tools were either inside or around the truck"—which the court considered "all one unit of property"—the court further found Houston had "abandoned the other personal property" as well.

As for the Conards' other claims, the district court concluded:

8

"The Defendant breached the contract with Plaintiffs by failing to complete the work he was paid for and by failing to properly complete the work he did perform. Additionally, the Defendant was negligent in not properly securing his equipment or lowering the mast in order to prevent damage to Plaintiffs' property. Defendant informed Plaintiffs that he was insured when in fact, he was not insured at the time of the damage, and he effectively abandoned his personal property when he failed to propose any reasonable or appropriate plan to remove his property from Plaintiffs' land."

The district court further denied Houston's counterclaims, adding that it was adopting "Plaintiffs' findings of facts and conclusions of law regarding denial of Defendant's claims against Plaintiffs."

As for damages, the district court awarded a $1,000 judgment to the Conards "for the cost of their insurance deductible," but found the Conards "failed to prove the value of any other damages as a result of Defendant's negligence, misrepresentation, or breach of contract." Lastly, unlike the now-vacated order, the court declined the Conards' request for attorney fees, "agree[ing] with Defendant's proposed legal conclusions cited in his proposed finding of facts and conclusions of law that an award of attorney fees is unsupported by the contract between the parties and unfounded in the law."

Houston timely appealed.

ANALYSIS

Houston raises three primary issues on appeal. We review each in turn after first setting out our standard of review.

9

I. *We will review de novo whether the district court erred in its legal conclusions.*

We typically review factual findings and legal conclusions stemming from a bench trial under a bifurcated standard of review. We review the district court's factual findings for substantial competent evidence and its legal findings under an unlimited standard of review. *Gannon v. State*, 298 Kan. 1107, 1175-76, 319 P.3d 1196 (2014); *Thoroughbred Assoc. v. Kansas City Royalty Co.*, 58 Kan. App. 2d 306, 316, 469 P.3d 666 (2020). "'Substantial competent evidence refers to legal and relevant evidence that a reasonable person could accept as being adequate to support a conclusion.'" *Pyle v. Gall*, 317 Kan. 499, 501, 531 P.3d 1189 (2023). When reviewing a district court's factual findings for substantial competent evidence, this court does not reweigh conflicting evidence, evaluate witnesses' credibility, or determine factual questions. *Board of Miami County Comm'rs v. Kanza Rail-Trails Conservancy, Inc.*, 292 Kan. 285, 325, 255 P.3d 1186 (2011). Instead, "the appellate court should review the facts of the case in the light most favorable to the prevailing party below to ascertain whether the trial court's decision is properly supported by substantial competent evidence." *In re Adoption of J.M.D.*, 293 Kan. 153, 171, 260 P.3d 1196 (2011).

That said, Houston contends this court should review the district court's factual findings de novo, since the judge who issued the final decision was not the same judge who conducted the bench trial.

Although Houston is correct that Judge Frederick specifically stated she reviewed "the trial transcript,"—and not any Zoom recording of the bench trial as the Conards suggest—that does not automatically mean her decision was based solely upon written or documentary evidence such that this court should exercise de novo review. The Kansas Supreme Court has long held that the substantial competent evidence standard of review still applies when a record contains "conflicting testimony or when the case involves oral testimony that is conflicting." *State v. Brown*, 272 Kan. 843, 845, 35 P.3d 910 (2001). As

10

stated in *Giblin v. Giblin*, 253 Kan. 240, 253, 854 P.2d 816 (1993), "[t]he rationale behind not allowing appellate de novo determination of facts in a case involving witness testimony is that [appellate courts] do not weigh conflicting testimony." Because many, if not all, of Houston's arguments on appeal turn on pointing out the conflicting testimony offered at trial, we must decline his request to apply de novo review to the district court's factual findings.

Yet, because of his mistaken belief that de novo review is appropriate for the district court's factual findings, Houston makes no attempt to argue the substantial competent evidence standard throughout his brief. To that end, we are required to conclude he has abandoned any challenge to the district court's factual findings because of inadequate briefing. See *In re Marriage of Williams*, 307 Kan. 960, 977, 417 P.3d 1033 (2018). Since Houston accedes to the district court's factual findings, that would mean he is not entitled to relief unless he can show that the district court erred in making its legal conclusions.

And finally, although Houston does not address it in his brief, resolving some of the issues presented here requires statutory interpretation, which presents a question of law subject to unlimited review. *Roe v. Phillips County Hospital*, 317 Kan. 1, 5, 522 P.3d 277 (2023).

II.    *The district court erred in quieting title to Houston's personal property in the Conards' favor.*

First, Houston challenges the district court's ruling on the Conards' quiet title claim, arguing the Conards could not rely on an abandonment theory because it was not raised in their petition and that the Conards failed to prove a valid ownership interest in his personal property.

11

A. *The Conards properly plead their quiet title claim.*

Before addressing the district court's factual findings and legal conclusions relating to the quiet title claim, Houston asserts as a threshold issue that the Conards improperly raised abandonment for the first time in their proposed findings of fact and conclusions of law. Whether a pleading is sufficient to state a cause of action is a question of law, which appellate courts review independently, with no required deference to the district court. *Unruh v. Purina Mills, L.L.C.*, 289 Kan. 1185, 1191, 221 P.3d 1130 (2009) ("Whether a pleading is sufficient to state a cause of action is a question of law."); see *Granados v. Wilson*, 317 Kan. 34, 40, 523 P.3d 501 (2023) ("[A]n appellate court reviews the district court's legal conclusions independently, with no required deference to the district court.").

Houston correctly notes that the issues raised in a petition control in the absence of a pretrial order. See *Febert v. Upland Mutual Ins. Co.*, 222 Kan. 197, Syl. ¶ 1, 563 P.2d 467 (1977) ("In the absence of a pretrial order, the issues raised by the facts alleged in the petition control the scope of a lawsuit."). But contrary to Houston's argument, parties are not strictly bound by the legal theories supporting the claims articulated in a petition because Kansas is a notice-pleading state, meaning that the initial petition "is not intended to govern the entire course of the case." *Berry v. National Medical Services, Inc.*, 292 Kan. 917, 918, 257 P.3d 287 (2011); see also *Fowler v. Criticare Home Health Services, Inc.*, 27 Kan. App. 2d 869, 874, 10 P.3d 8 (2000) ("'It is not necessary to spell out a legal theory of relief so long as an opponent is apprised of the facts that entitle plaintiff to relief.'") (quoting *Oller v. Kincheloe's, Inc.*, 235 Kan. 440, 447, 681 P.3d 630 [1984]), *aff'd* 271 Kan. 715, 26 P.3d 69 (2001). Instead, K.S.A. 2023 Supp. 60-208(a) only requires a petition to include a "short and plain statement" showing the plaintiff is entitled to relief and a demand for the relief sought. Once the parties have completed discovery, the pretrial order is "the ultimate determinant as to the legal issues and theories on which the case will be decided." *Unruh*, 289 Kan. at 1191.

12

Many of the cases cited by Houston on this point do not apply because there were pretrial orders filed in those cases that limited the ultimate issues to be decided. Only in *Bank of Blue Valley v. Duggan Homes*, 48 Kan. App. 2d 828, 834, 303 P.3d 1272 (2013), did the petition control the scope of the lawsuit because no pretrial order had been filed, and the facts conflict with the circumstances here. In that case, the plaintiff filed a foreclosure action and then attempted to assert a quiet title claim for the first time in a motion for summary judgment. Although the district court granted summary judgment in the plaintiff's favor and quieted title, this court reversed on appeal because that claim had not been plead in the petition. 48 Kan. App. 2d at 835. In contrast, here the Conards asserted their quiet title claim from the start.

In addition, Houston incorrectly asserts that the Conards needed to specifically articulate the word "abandonment" in their petition to argue that theory later. The Conards clearly stated in their petition that they were raising a quiet title claim because "Defendant's drilling rig, a 1996 Ford, VIN 1FDZY82E0TVA26107, tipped over and has been left unattended on the Plaintiff's property" and because of his "failure to pay to have all negligent acts and intentional acts compensated for." Under Kansas' notice-pleading standards, these factual allegations were sufficient to apprise Houston that the Conards believed they were entitled to relief on their quiet title claim because of his actions in abandoning his personal property. In other words, the district court did not exceed the scope of the petition by granting the Conards relief on their quiet title claim on an abandonment theory.

B. *The Conards were not entitled to relief on their quiet title claim.*

Moving to the merits of the quiet title claim, such claims are governed by statute in Kansas. Relevant to this appeal, K.S.A. 60-1002(a) allows an action to be brought "by any person claiming title or interest in personal . . . property. . . against any person who claims an . . . interest therein adverse to him or her, for the purpose of determining such

13

adverse claim." To prevail, the Conards "must rely on the strength of [their] own title, and not the weakness of [an] adversary's title." *Ford v. Willits*, 9 Kan. App. 2d 735, 745, 688 P.2d 1230 (1984), *aff'd* 237 Kan. 13, 697 P.2d 834 (1985); see also *Bucklin National Bank v. Hayse Ranch*, 58 Kan. App. 2d 715, 721, 475 P.3d 1 (2020).

To begin, this court can quickly dispatch Houston's assertion that the Conards' request for relief only sought title to the truck and not the attached drilling rig, trailer, and tools contained therein. On this point, the district court concluded these items were "all one unit of property," which Houston now disputes citing a lack of any evidence that the drilling rig, trailer, and tools could not be removed from the truck. As the Conards note, their petition sought title to "the Defendant's drilling rig, a 1996 Ford, VIN 1FDZY82E0TVA26107" that was "tipped over and has been left unattended on the Plaintiff's property." Treating all of Houston's personal property as a single unit for the purpose of the quiet title claim was not error since it is undisputed all these items were left unattended on the Conards' property after May 2019.

In approving the Conards' quiet title claim, the district court adopted the Conards' proposed findings of fact and conclusions of law but also found that Houston "effectively abandoned his personal property when he failed to propose any reasonable or appropriate plan to remove his property from Plaintiffs' land." The factual findings relevant to this issue that were adopted by reference include:

"3.     Defendant brought his drilling rig onto Plaintiffs' property by agreement of the parties on April 12, 2019.

"4.     Defendant's drilling rig fell over on or about May 7, 2019.

"5.     Plaintiffs trespassed Defendant from entering the property to retrieve Defendant's drilling rig unless certain conditions were met to complete the same, including objectives and solutions including providing insurance for the retrieval.

"6.     Defendant abandoned his drilling rig on Plaintiffs' property for thirteen (13) months until the Plaintiffs' filing of this action.

14

"7.     An original Court order, which was subsequently set aside, quieted title to Defendant's drilling rig, allowing Plaintiffs to take steps necessary to alleviate the damage caused by Defendant.

"8.     From May of 2019 through June of 2020, Defendant's drilling rig laid tipped over in Plaintiffs' yard. [Citations omitted.]"

Likewise, the legal conclusions adopted by reference include:

"27.     K.S.A. 60-1002(a) provides that an action may be brought by any person claiming title or interest in personal property, against any person who claims an interest therein adverse to him or her, for the purpose of determining such adverse claim.

"28.     Plaintiffs filed this action for Quiet Title due to Defendant's abandonment of his drilling rig on Plaintiffs' property for thirteen (13) months.

"29.     Plaintiffs acquired a default judgment against Defendant for the possession of the drilling rig due to its abandonment and Defendant's failure proceed with litigation, as is cited above.

"30.     When possession and ownership of the drilling rig was awarded to Plaintiffs, Plaintiffs used the drilling rig as payment to have a third-party driller complete the work that Defendant ultimately failed or refused to do.

"31.     Because Defendant abandoned the drilling rig on Plaintiffs' property and failed to combat Plaintiffs' claims of title in the personal property when the time for the same arose, Plaintiffs' [*sic*] should be awarded rights to the drilling rig and the title remain quieted.

"32.     In the alternative, any order other than the proposed may be moot due to the displacement of the drilling rig in lieu of payment to complete the contracted work Defendant should have completed."

As explained above, Houston does not specifically challenge any of the factual findings or otherwise contend they were not supported by substantial competent evidence available in the record. That said, he nonetheless establishes that the district court's quiet title judgment is flawed.

15

The district court concluded the Conards were entitled to relief on their quiet title claim for two reasons: (1) Houston abandoned his personal property; and (2) they obtained ownership through the default judgment. Beginning with the second point, as Houston points out, a void judgment is an absolute nullity with no legal force or validity. See *In re Henson*, 58 Kan. App. 2d 167, 182, 464 P.3d 963 (2020) (citing *Sramek v. Sramek*, 17 Kan. App. 2d 573, Syl. ¶ 2, 840 P.2d 553 [1992]). Thus, the district court erred as a matter of law by purporting to attach legal force to the void default judgment as a basis for finding they established an ownership interest to entitle them to their requested relief.

On the first point, the district court's factual findings that Houston abandoned his personal property fail to establish that the Conards had a valid ownership interest to support a quiet title claim. To begin, the district court found that Houston abandoned his personal property for "thirteen (13) months until the Plaintiffs' filing of this action." But this fact is clearly not supported by substantial evidence because the record reflects that the Conards filed their petition in September 2019. Thus, although the rig remained on the Conards' property for 13 months in total, it had only been there for about 4 months when the case commenced.

Moreover, both parties recognize that abandonment under Kansas law requires both voluntary relinquishment and intent to give up rights of ownership, possession, or control. See *Davis v. Odell*, 240 Kan. 261, 269, 729 P.2d 1117 (1986). Intent to abandon is "paramount" to the inquiry and "it is not enough that the owner's acts give reasonable cause to others to believe that the property has been abandoned." *Botkin v. Kickapoo, Inc.*, 211 Kan. 107, 110, 505 P.2d 749 (1973). Further,

> "the act of abandonment must be an overt act or some failure to act which carries the implication that the owner neither claims nor retains any interest in the subject matter of the abandonment. It is not necessary to prove intention to abandon by express

16

declarations or by other direct evidence; intent to abandon property or rights in property is to be determined from all the surrounding facts and circumstances. It may be inferred from the acts and conduct of the owner and from the nature and situation of the property. Mere nonuse of property, lapse of time without claiming or using property, or the temporary absence of the owner, unaccompanied by any other evidence showing intention, generally are not enough to constitute an abandonment. However, such facts are competent evidence of an intent to abandon and as such are entitled to weight when considered with other circumstances." 211 Kan. at 110.

The district court concluded Houston abandoned his property because he "failed to propose any reasonable or appropriate plan to remove his property from Plaintiffs' land," but also that the evidence showed the Conards would not allow him to enter their property to retrieve the drilling rig "unless certain conditions were met to complete the same, including objectives and solutions including providing insurance for the retrieval." But these findings imply that Houston had proposed unreasonable or inappropriate plans to retrieve his personal property, not that he intended to abandon it entirely. Aaron even testified that Houston texted him in July 2019 stating that he would obtain insurance, further demonstrating that Houston intended to retain ownership of his personal property. While Aaron's testimony also showed that Houston stopped communicating with him after that July text, that merely establishes a lapse of time without claiming the property—which is insufficient standing alone to guarantee Houston abandoned his claim to the property. See *Botkin*, 211 Kan. at 110.

As a result, we agree with Houston and find the district court erred in granting the Conards relief on their quiet title claim. Houston did not abandon his personal property and the Conards cannot rely on the void default judgment to obtain an ownership interest in his personal property. Thus, we reverse the district court's judgment granting quiet title in the Conards' favor.

17

III.    *The district court did not err in ruling on the Conards' tort claims.*

Second, Houston challenges the district court's rulings on the negligence and fraudulent misrepresentation claims, arguing the Conards failed to present evidence to support elements of these tort claims.

A. *The Conards proved Houston was negligent.*

As a threshold matter, Houston contends the Conards were not entitled to judgment on their negligence claim because they alleged and the district court agreed that he violated a *contractual* duty, resulting in the $1,000 damages award to cover the Conards' insurance deductible. The problem with Houston's position is that the district court did not award the $1,000 in damages for his breach of contract, as it was tied to the negligence claim instead.

In its journal entry, the court concluded "Defendant was negligent in not properly securing his equipment or lowering the mast in order to prevent damages to Plaintiffs' property" and "granted a judgment for $1,000 for the cost of their insurance deductible." Then, in the findings adopted by reference, the court found "Because of Defendant's failures to act with ordinary care in maintaining his rig, the rig tipped over onto Plaintiffs' lean-to, causing $2,600.00 in damage," and that "Plaintiffs were forced to pay a $1,000.00 deductible to have the damage repaired."

But regarding the breach of contract claim, the district court concluded "Defendant breached the contract with Plaintiffs by failing to complete the work he was paid for and by failing to properly complete the work he did perform," and further in the adopted findings that the Conards were damaged because they had to hire another company to complete the work. Yet although there was evidence establishing exactly how much money the Conards paid Houston, the district court awarded no damages for the breach of

18

contract. So it appears Houston has confused the district court's ruling, since the court concluded the Conards proved no damages resulting from the breach of contract. But since Houston concedes he breached the contract and the Conards are not challenging the lack of a damages finding resulting from that breach, there is nothing for this court to review related to the court's contract ruling.

Moving to the merits of Houston's argument on the negligence claim, he recites the well-known rules for establishing negligence. A plaintiff must prove four essential elements:  (1) The defendant owed plaintiff a legally recognized duty; (2) the defendant breached that duty; (3) the defendant's breach of duty caused plaintiff's injuries; and (4) plaintiff suffered damages. *Unruh v. City of Wichita*, 318 Kan. 12, 13-14, 540 P.3d 1002 (2024). Houston only meaningfully challenges the first and second elements of negligence by arguing (1) he could not be held strictly liable since water well drilling is not an "abnormally dangerous activity," and (2) the Conards needed to present expert testimony to establish the standard of care for water well drillers.

On this first point, Houston correctly notes the Kansas Supreme Court has concluded that "the drilling and operation of natural gas wells is not an abnormally dangerous activity" to make the operators strictly liable for natural gas runoff into a farmer's irrigation water. *Williams v. Amoco Production Co*., 241 Kan. 102, 116, 734 P.2d 1113 (1987). But nothing about the district court's ruling suggests that it concluded he was strictly liable because the job he was completing for the Conards was an abnormally dangerous activity. See 241 Kan. at 114-15 (adopting test for determining whether an activity is abnormally dangerous). Rather, the court concluded Houston was "negligent in not properly securing his equipment or lowering the mast in order to prevent damage to Plaintiffs' property," further finding that Houston acknowledged he owed the Conards an "ordinary" duty of care, which he "breached . . . when he failed to lower the mast and boom with impending inclement weather." Therefore, we need not

19

address whether Houston was strictly liable for engaging in an abnormally dangerous activity.

Houston's second argument about whether the Conards needed to present expert testimony is also ultimately unavailing. As he notes, the general rule in Kansas is that "when plaintiffs are attempting to establish negligence based upon a departure from the reasonable standard of care in a particular profession, expert testimony is required to establish such a departure." *Moore v. Associated Material & Supply Co.*, 263 Kan. 226, 234-35, 948 P.2d 652 (1997). But as this court recently recognized, that does not mean "any claim of negligence related to an alleged deviation from the reasonable standard of care in the performance of a job function would require expert testimony." *S.B. v. Sedgwick Co. Area Educ. Svcs.*, 65 Kan. App. 2d 54, 63-64, 556 P.3d 902 (2024). In that case, this court held parents were not required to present expert testimony because their negligence claim alleged a deviation from the reasonable standard of care to train a teacher not to inappropriately restrain and physically assault their child, not a deviation from the reasonable standard of care in providing professional services to students with specialized needs. 65 Kan. App. 2d at 66.

Houston's argument on appeal is like that of the appellee in *S.B.* because he is arguing that expert testimony was needed to determine whether he breached a duty arising from a professional standard of care based on his testimony that "he secured his rig in the same manner as he had for over two decades without incident." In ordinary circumstances, Houston makes a compelling point that expert testimony would be needed to determine whether he properly secured his drilling rig according to professional standards. That said, these were not ordinary circumstances because the district court also concluded that Houston breached a duty of care by failing to lower the mast before an incoming storm. Houston makes no attempt to argue that this failed act somehow fell within either a professional or ordinary standard of care. And contrary to Houston's point, the Conards did not need to present expert testimony because a common layperson would

20

have the knowledge and experience to assess whether Houston acted negligently under the circumstances. As a result, we find the district court did not err in ruling in the Conards' favor on their negligence claim.

B. *Even if we assume, without deciding, that the Conards proved their fraudulent misrepresentation claim, the district court did not find they incurred damages, so there is no additional relief this court could order.*

Houston also challenges the district court's finding that he fraudulently misrepresented that he had insurance on his drilling rig. We need not engage in a lengthy discussion of this claim because, as Houston correctly points out, the district court concluded the Conards failed to establish they sustained any damages related to this claim. In fact, the Conards' proposed findings of fact and conclusions of law—which the court adopted by reference "in full"—only discussed the damage sustained to the Conards' carport and the resulting $1,000 insurance deductible in the section devoted to the negligence claim.

To be entitled to relief for a fraudulent misrepresentation, otherwise known as a fraudulent inducement, a plaintiff must prove: (1) The defendant made false representations as a statement of existing and material fact; (2) the defendant knew the representations to be false or made them recklessly without knowledge concerning them; (3) the defendant made the representations intentionally for the purpose of inducing another party to act upon them; (4) the other party reasonably relied and acted upon the representations; and (5) the other party sustained damages by relying upon the representations. *Stechschulte v. Jennings*, 297 Kan. 2, 19, 298 P.3d 1083 (2013). Although the district court found Houston fraudulently misrepresented to the Conards that his drilling rig was insured, the only damage they sustained was being "forced to file a claim on their own insurance to correct and repair damages caused by Defendant's drilling rig." But since the $1,000 damages award is already tied to their negligence

21

claim, any relief in Houston's favor on the fraudulent misrepresentation claim would have no effect.

IV.  *The district court erred in rejecting Houston's counterclaim, thereby negating any claim for unjust enrichment.*

Finally, Houston contends the district court erred in rejecting his counterclaims for conversion and unjust enrichment, arguing it was improper to allow the Conards to rely on the void default judgment granting them quiet title as a way to take ownership of his personal property and transferring it to a third party as compensation.

"Conversion is the 'unauthorized assumption or exercise of the right of ownership over goods or personal chattels belonging to another to the exclusion of the other's rights.'" *Armstrong v. Bromley Quarry & Asphalt, Inc.*, 305 Kan. 16, 22, 378 P.3d 1090 (2016) (quoting *Bomhoff v. Nelnet Loan Services, Inc.*, 279 Kan. 415, 421, 109 P.3d 1241 [2005]). Here, the district court's ruling explicitly recognized that the only reason it rejected Houston's conversion counterclaim was that the Conards "had authority to exert ownership over the drilling rig at the time it was displaced" because of "an order quieting title in [their] favor." But since void judgments have no legal force or validity, the Conards could not obtain legal ownership via the district court's default judgment that was later set aside. See *Henson*, 58 Kan. App. 2d at 182 (citing *Sramek*, 17 Kan. App. 2d 573, Syl. ¶ 2). And as explained in the first issue, the Conards were not entitled to a quiet title judgment because Houston did not abandon his property.

The Conards appear to concede that resolving the quiet title claim is determinative of Houston's conversion counterclaim, yet nonetheless assert since Houston "never offered any evidence as to the value of the drilling rig" the appropriate remedy is to remand so the district court can make that determination. Houston disagrees that the case needs be remanded, referencing his unchallenged testimony on the value of the property

22

he had to replace. See *Drouhard v. City of Argonia*, 64 Kan. App. 2d 246, 267, 551 P.3d 156 (2024) (affirming conversion damages based solely on party's unrebutted testimony).

Contrary to Houston's contention, we remand to the district court for a proper apportionment of damages on his conversion counterclaim. See *Building Erection Svcs. Co. v. Walton Construction Co.*, 312 Kan. 432, 444, 475 P.3d 1231 (2020) (reversing Court of Appeals panel's decision not to remand case for determination of damages and remanding to district court). Although he is correct that he presented evidence which would support an award of damages, the district court never reached that determination because it concluded the Conards were authorized to exert ownership of his personal property. Because we reverse the district court's conversion ruling, we remand for entry of a damages award.

Accordingly, as Houston acknowledges in his brief, the availability of an adequate remedy on his conversion claim negates the need to award him damages on his unjust enrichment claim. See *Deeds v. Waddell & Reed Invst. Mgmt. Co.*, 47 Kan. App. 2d 499, 511, 280 P.3d 786 (2012). Because he requested the same damages on both counterclaims, he would not be entitled to equitable relief even if he could establish his unjust enrichment claim.

In sum, we find the district court erred in granting the Conards relief on their quiet title claim and reverse that ruling. Likewise, we find the court erred in rejecting Houston's counterclaim for conversion, given that it was entered in reliance on the validity of the quiet title judgment, and reverse and remand that aspect of the court's judgment for determination of an appropriate award of damages. However, we affirm the court's rulings on the Conards' negligence and fraudulent misrepresentations claims, as well as Houston's counterclaim for unjust enrichment.

Affirmed in part, reversed in part, and remanded with directions.